1997–NMSC–006

932 P.2d 1

**STATE of New Mexico, Plaintiff–
Respondent,**

v.

**Alfredo GOMEZ, Defendant–Petitioner.**

No. 23224.

Supreme Court of New Mexico.

Jan. 7, 1997.

T. Glenn Ellington, Chief Public Defender, David Henderson, Assistant Appellate Defender, Santa Fe, for Defendant–Petitioner.

Tom Udall, Attorney General, M. Anne Wood, Assistant Attorney General, Santa Fe, for Plaintiff–Respondent.

Ellen L. Bayard, Santa Fe, for Amicus Curiae NMCDLA.

## OPINION

RANSOM, Justice.

1. Alfredo Gomez was charged with possession of lysergic acid diethylamide (LSD), a Schedule I controlled substance prohibited under NMSA 1978, Section 30–31–23 (Repl. Pamph.1989). The trial court denied a motion to suppress evidence obtained from the warrantless search of Gomez's automobile while he was under arrest. Gomez pleaded nolo contendere and reserved the right to appeal the denial of his suppression motion. In an unpublished memorandum opinion, the Court of Appeals affirmed the conviction, holding that Gomez had failed to preserve in the trial court his argument that the search was invalid under Article II, Section 10 of the New Mexico Constitution, which proscribes unreasonable searches and seizures and requires specificity and probable cause for warrants, even if permitted under the virtually same Fourth Amendment to the United States Constitution. We issued our writ of certiorari to address, first, what is required to "fairly invoke" and preserve for appellate review a search and seizure claim under Article II, Section 10; and, second, what the State must show to justify the warrantless search of an automobile.

2. We hold that a state constitutional claim was preserved because Gomez both invoked a principle of exigency previously recognized under the New Mexico Constitution and developed the facts needed for a ruling on that question. He thus met the requirements of Rule 12–216(A) NMRA 1996 (mandating that to preserve a question for review "it must appear that a ruling or decision by the district court was fairly invoked"). We also hold that to justify the warrantless search of Gomez's automobile, the State must show reasonable grounds for the belief that exigent circumstances existed. In this case, it was reasonable for the officer to believe exigent circumstances existed. Therefore, we affirm the conviction.

3. *Facts and Proceedings.* In his motion to supress, Gomez alleges that "Lea County Deputy Sheriff Guy Payne searched Alfredo Gomez's car—including a closed container in the car—without a search warrant, or exi-

gent circumstances to justify a warrantless search ... [and this was] violative of the Fourth Amendment to the United States Constitution, and Section 10, Article II of the New Mexico Constitution." The trial court held a hearing on the motion, at which Deputy Payne was the sole witness. A summary of his testimony follows.

4. Late at night on June 13, 1994, Payne was dispatched to a "party disturbance" near Lovington, New Mexico. Arriving at the scene, Payne observed cars parked on both sides of a dirt road and fifty to sixty people walking in the road and yards. He spoke to several men to inquire whether there was a problem. They told him that if there were a problem, it would be at Alfredo Gomez's car where some "juveniles" had gathered. He drove his patrol car slowly towards Gomez's car, which was parked on the left side of the road with the passenger side closest to Payne. As he approached, Payne observed some beer on the trunk of Gomez's car, but observed no disturbance. He stopped his patrol car about eight feet away from and parallel to Gomez's car. Three men were leaning towards the passenger side of the car and focussing their attention on Gomez, who was sitting in the passenger seat.

5. As Payne watched, one of the men outside Gomez's car glanced around, noticed the patrol car with Payne in it, and said, "The cops!" Gomez made eye contact with Payne and began to move about frantically. Payne heard the sound of a tin container being shut and saw Gomez furtively stuff something under the front seat. Payne got out of the patrol car and Gomez got out of his car locking the opened passenger door. Payne smelled the odor of burned and unburned marijuana, and, before Gomez was able to shut the passenger door, Payne grabbed it and the two struggled briefly as Payne tried to keep the door open and Gomez attempted to shut it.

6. Payne handcuffed Gomez, "Mirandized" him, searched him, and secured him in the patrol car. Payne's search of Gomez's person uncovered some money and cigarette papers. By the time Gomez had been arrested and secured, additional officers had arrived on the scene. Then, looking inside Gomez's car, Payne observed marijuana scattered on the console, seat, and floorboard. He also saw a brass pipe and a pair of hemostats, items commonly used for smoking marijuana. Payne opened the door, searched the interior of the car, and seized the pipe, hemostats, marijuana, a tin container, and a fanny pack. He unzipped the fanny pack and inside it found perforated tabs of white paper, which from experience he believed to contain LSD. He also found some small "baggies" inside the fanny pack.

7. On cross-examination, defense counsel asked Payne whether an emergency existed to justify his warrantless search of Gomez's car. The State objected on the grounds that *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), allows a search of an automobile with probable cause alone. The State asserted Payne's warrantless search was valid because New Mexico courts have followed *Ross.* Defense counsel responded that there was contrary New Mexico precedent. The trial court allowed Payne to answer the question and postponed argument on the legal issue raised by the State's objection until after Payne's testimony.

8. Payne testified further that he felt no threat to his safety after he secured Gomez in his patrol car. He felt, however, that he and the other officers had to be careful because their activities had drawn the attention of as many as one hundred onlookers. He did not believe that taking the car keys would suffice to secure the car, nor that the other officers at the scene could pay attention to the car while dealing with developing problems and with what easily could have turned into a hostile crowd. He believed the car would not have remained at the scene if he had left it unattended to obtain a search warrant. He did not know when he could get a tow truck to the scene. After the search, he did call a tow truck and, when Gomez's car was impounded, Payne returned to the police station where he turned over the drugs and paraphernalia from Gomez's car to a narcotics officer for testing.

9. Following Payne's testimony, the court entertained argument in which the State asserted that, from Payne's vantage point while stopped parallel to Gomez's automobile, he

observed facts sufficient to establish reasonable suspicion justifying further investigation. Once Payne smelled marijuana, he had probable cause to search Gomez's automobile and its closed containers. In support of its argument that the warrant requirement does not apply to a lawfully stopped vehicle, the State cited *Ross* together with *State v. Pena,* 108 N.M. 760, 779 P.2d 538 (1989), and *State v. Apodaca,* 112 N.M. 302, 814 P.2d 1030 (Ct.App.1991). It argued that probable cause alone justifies searching a movable vehicle and its closed containers. The State acknowledged, however, that a "recent case from Roswell" required police to obtain a warrant for the *arrest* of the operator of a moving vehicle unless there are exigent circumstances. *See Campos v. State,* 117 N.M. 155, 870 P.2d 117 (1994) (*Campos II* ) (reversing *State v. Campos,* 113 N.M. 421, 827 P.2d 136 (Ct.App.1991) (*Campos I* )).

10. Defense counsel noted that the fanny pack, a closed container, was not in plain view when Gomez was arrested. He cited *State v. Coleman,* 87 N.M. 153, 530 P.2d 947 (Ct.App.1974), for the proposition that exigent circumstances were required to justify this warrantless search. In *Coleman,* an officer stopped the defendant's speeding car, which was being driven by an unlicensed occupant of the car. At the officer's request, the defendant followed the officer in the defendant's car to the sheriff's office where the defendant and the other occupants of the car were arrested. The officer then conducted a warrantless search of the car securely parked outside the sheriff's office. The search was held invalid because there were no exigent circumstances. *Id.* at 155, 530 P.2d at 949.

11. The State replied that Payne's testimony was reasonable and believable, noted that *Pena* and *Apodaca* were decided more recently than *Coleman,* and observed that whereas *Pena* was decided by the New Mexico Supreme Court, *Coleman* was a Court of Appeals opinion. Adopting Payne's testimony as factual, the court ruled that, while it did not disagree with the holding in *Coleman,* it regarded *Coleman* as distinguishable from the facts of this case. The court denied the motion to suppress, explaining that with the marijuana and paraphernalia in plain view Payne had probable cause under *Pena* and *Apodaca* to search the entire vehicle, including closed containers therein such as the fanny pack.

12. *Preservation of Article II, Section 10 claim.* The Court of Appeals refused to review Gomez's Article II, Section 10 claim because "[his] argument below not only failed to articulate why the New Mexico Constitution affords greater protection under these circumstances, but failed to even mention the state constitution." The State contends that New Mexico's independent search and seizure law does not obviate the requirements of Rule 12–216(A); that Gomez's citation to *Coleman* was not enough to alert the trial court to the broader-protection issue; that Gomez made less of a showing than the defendant in *State v. De Jesus–Santibanez,* 119 N.M. 578, 893 P.2d 474 (Ct.App.), *cert. denied,* 119 N.M. 464, 891 P.2d 1218 (1995) (refusing to review state constitutional claim on appeal where defendant argued in trial court that state constitution provided more protection than federal constitution but failed to make specific argument advanced on appeal); and that the trial court did not rule on the issue whether there were exigent circumstances. The State urges this Court to adopt the approach taken by the Court of Appeals below and rule that Gomez failed to preserve the issue because of his failure to cite to the specific cases in which Article II, Section 10 was interpreted to provide broader protection than the Fourth Amendment.

13. Gomez responds that the fundamental goals underlying Rule 12–216 were met because the facts needed for a ruling on the existence of exigent circumstances were developed adequately and the trial court ruled on that issue. He contends that the Court of Appeals created for state constitutional claims a "special preservation rule" that treats the New Mexico Constitution as a "poor cousin" of the United States Constitution. Under this special rule, arguments in the trial court sufficed to preserve the Fourth Amendment issue but failed to preserve the broader-protection issue. Gomez contends this frustrates the role of New Mexico appellate courts in interpreting the

state constitution and diminishes the force of decisions interpreting the state constitution independently. Gomez argues that the requirements for preserving a state constitutional claim should be identical to those for preserving a federal constitutional claim.[1]

■ 14. —*Origins of Rule 12–216.* Rule 12–216 may be traced to the earliest decisions of this Court. In *Fullen v. Fullen,* 21 N.M. 212, 153 P. 294 (1915), this Court surveyed appellate preservation rules of other jurisdictions and noted that "[i]t is a fundamental rule of appellate practice and procedure that an appellate court will consider only such questions as were raised in the lower court." *Id.* at 225, 153 P. at 297. Rule 12–216(A) updates and codifies this rule. A trial is first and foremost to *resolve* a complaint in controversy, and the rule recognizes that a trial court can be expected to decide only the case presented under issues fairly invoked.[2]

15. In *Sais v. City Electric Co.,* 26 N.M. 66, 68–69, 188 P. 1110, 1111 (1920), we recognized three exceptions to the rule announced in *Fullen:* jurisdictional questions, questions of a general public nature, and questions involving fundamental rights of a party. With minor adjustments and modifications, these exceptions essentially are unchanged from 1920. *Compare Sais,* 26 N.M. at 68–69, 188 P. at 1111, *with* Rule 12–216(B) (excepting "jurisdictional questions" and questions of "general public interest" or of "fundamental error or fundamental rights of a party" from preservation rule).

16. —*Lock-step with federal precedent.* When *Fullen* and *Sais* were decided, and for several decades thereafter, the New Mexico Constitution was interpreted in "lock-step" with federal precedent interpreting the United States Constitution when parallel provi-

sions were involved. If the federal constitution provided protection against deprivation of an individual right, then New Mexico courts followed federal precedent, as required by the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, § 2. Furthermore, where the federal constitution did not provide such protection, we would follow that precedent without interpreting independently the parallel provision of the New Mexico Constitution. *See, e.g., State v. Garcia,* 76 N.M. 171, 174, 413 P.2d 210, 212 (1966) (referring to Article II, Section 10 as "almost identical" with Fourth Amendment).

17. —*Power of independent constitutional interpretation.* In *State ex rel. Serna v. Hodges,* 89 N.M. 351, 356, 552 P.2d 787, 792 (1976), *overruled in part on other grounds by State v. Rondeau,* 89 N.M. 408, 412, 553 P.2d 688, 692 (1976), in considering the constitutionality of the death penalty, this Court observed that the states have inherent power as separate sovereigns in our federalist system to provide *more* liberty than is mandated by the United States Constitution:

> We [consider Article II, § 13 of the New Mexico Constitution] as the ultimate arbiters of the law of New Mexico. We are not bound to give the same meaning to the New Mexico Constitution as the United States Supreme Court places upon the United States Constitution, even in construing provisions having wording that is identical, or substantially so, "unless such interpretations purport to restrict the liberties guaranteed the entire citizenry under the federal charter."

89 N.M. at 356, 552 P.2d at 792 (citation omitted). Though at the time of *Hodges* no result had been altered by an analysis of the state constitution, *see, e.g., State v. Deltenre,* 77 N.M. 497, 503–04, 424 P.2d 782, 786 (1967)

---

1. In *Campos I,* the majority opinion and dissent of Chief Judge Apodaca discussed at some length different positions on whether the state constitutional issue had been preserved. *See* 113 N.M. at 426, 429–30, 827 P.2d at 141, 144–45. No preservation issue was presented to the Supreme Court for review on certiorari, and we did not address the preservation requirement *sua sponte.*

2. The rule requiring preservation of issues for consideration on appeal places limitations on

parties, but not on courts. *See, e.g., Kellan v. Firemen's Pension Fund,* 194 Ill.App.3d 573, 141 Ill.Dec. 271, 551 N.E.2d 264 (1990); *Town of South Tucson v. Board of Supervisors,* 52 Ariz. 575, 84 P.2d 581, 584 (1938), *quoted in Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 733 P.2d 1073 (1987) (question whether court will review question not raised at trial is "one of administration, not of power").

(recognizing that a warrantless arrest valid under federal standards "must still be tested by New Mexico standards," but finding "nothing in New Mexico cases which vitiates the validity of the arrest"), more recently a right not protected under the federal constitution has been protected under the state constitution, *see, e.g., Campos II; State v. Attaway*, 117 N.M. 141, 870 P.2d 103 (1994); *State v. Gutierrez*, 116 N.M. 431, 863 P.2d 1052 (1993); *State v. Cordova*, 109 N.M. 211, 784 P.2d 30 (1989).

■ 18. *—Approaches to independent constitutional interpretation.* Commentators classify the interpretation of state constitutions as lock-step, primacy, or interstitial. As stated above, we no longer follow the lock-step approach. Under the primacy approach, "[i]f a defendant's rights are protected under state law, the court need not examine the federal question. If a defendant's rights are not protected under state law, the court must review the matter in light of the federal constitution." Shirley S. Abrahamson, *Criminal Law and State Constitutions: The Emergence of State Constitutional Law*, 63 Tex.L.Rev. 1141, 1170 (1985). Several states have followed this path. *See, e.g., State v. Rowe*, 480 A.2d 778 (Me.1984); *State v. Chaisson*, 125 N.H. 810, 486 A.2d 297 (1984); *State v. Soriano*, 68 Or.App. 642, 684 P.2d 1220 (1984); *State v. Jackson*, 102 Wash.2d 432, 688 P.2d 136 (1984).

■ 19. Under the interstitial approach, the court asks first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined. *See Developments in the Law—The Interpretation of State Constitutional Rights*, 95 Harv. L.Rev. 1324, 1358 (1982) [hereinafter *"Developments"*]. A state court adopting this approach may diverge from federal precedent for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics. *Id.*, at 1359.

20. *—The interstitial approach adopted.* Since abandoning the lock-step model, our tacit approach to interpretation of the New Mexico Constitution has been interstitial, providing broader protection where we have found the federal analysis unpersuasive either because we deemed it flawed, *e.g., Campos II*, 117 N.M. at 158, 870 P.2d at 120 ("[W]e must decline to adopt the blanket federal rule that all warrantless arrests of felons based on probable cause are constitutionally permissible in public places.... [W]e believe that each case must be reviewed in light of its own facts and circumstances."); *Gutierrez*, 116 N.M. at 446–47, 863 P.2d at 1067–68 (rejecting "good faith" exception to exclusionary rule), or because of distinctive state characteristics, *e.g, Cordova*, 109 N.M. at 216–17, 784 P.2d at 35–36 (concluding that New Mexico has not experienced rigidity and technicalities leading to federal abandonment of two-part test of informer's veracity and basis of knowledge as probable cause to issue warrant); *State v. Sutton*, 112 N.M. 449, 455, 816 P.2d 518, 524 (Ct.App.1991) (noting in dicta that the federal "open fields" doctrine might clash with privacy exceptions in New Mexico where "lot sizes in rural areas are often large, and land is still plentiful"), or because of undeveloped federal analogs, *e.g., Attaway*, 117 N.M. at 151, 870 P.2d at 113 (holding New Mexico Constitution embodies a knock-and-announce requirement for entry to execute warrant—federal constitution only later interpreted similarly in *Wilson v. Arkansas*, 514 U.S. 927, ——, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976 (1995)).

■ 21. We today specifically adopt the interstitial in preference to the primacy approach because

[w]hen federal protections are extensive and well-articulated, state court decisionmaking that eschews consideration of, or reliance on, federal doctrine not only will often be an inefficient route to an inevitable result, but also will lack the cogency that a reasoned reaction to the federal view could provide, particularly when parallel federal issues have been exhaustively discussed by the United States Supreme Court and commentators.

*Developments, supra*, at 1357. As we stated in *Gutierrez*, "we recognize the responsibility of state courts to preserve national uniformity in development and application of fundamental rights guaranteed by our state and

federal constitutions." 116 N.M. at 436, 863 P.2d at 1057. The interstitial approach effectively advances this goal. As Justice Handler of the New Jersey Supreme Court noted,

> [O]ur national judicial history and traditions closely wed federal and state constitutional doctrine.... [A] considerable measure of cooperation must exist in a truly effective federalist system. Both federal and state courts share the goal of working for the good of the people to ensure order and freedom under what is publicly perceived as a single system of law.... Moreover, while a natural monolithic legal system is not contemplated, some consistency and uniformity between state and federal governments in certain areas of judicial administration is desirable.
>
> For these reasons, state courts should be sensitive to developments in federal law. Federal precedent in areas addressed by similar provisions in our state constitutions can be meaningful and instructive.

*State v. Hunt*, 91 N.J. 338, 450 A.2d 952, 964 (1982) (Handler, J., concurring).

■ 22. —*Interstitial approach to preserving question of broader protection under state constitution.* ——*Established precedent.* When a litigant asserts protection under a New Mexico Constitutional provision that has a parallel or analogous provision in the United States Constitution, the requirements for preserving the claim for appellate review depend on current New Mexico precedent construing that state constitutional provision. If established precedent construes the provision to provide more protection than its federal counterpart, the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue. This is no more than is required of litigants asserting a right

under the federal constitution, a federal statute, a state statute, or common law. That is, Rule 12–216 requires that litigants "fairly invoke" a ruling by the trial court in order to raise that question on appeal. Assertion of the legal principle and development of the facts are generally the only requirement to assert a claim on appeal.

23. ——*No precedent.* However, when a party asserts a state constitutional right that has *not* been interpreted differently than its federal analog, a party also must assert *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision.[3] This will enable the trial court to tailor proceedings and to effectuate an appropriate ruling on the issue.

■ 24. —*Gomez met requirements of Rule 12–216(A).* In his motion to suppress, Gomez asserted that Article II, Section 10 invalidates the search and seizure of his car and fanny pack because the search was conducted "without a search warrant, [and without] exigent circumstances to justify a warrantless search." Gomez urged the trial court to suppress the evidence seized "as the fruits of an arrest and search violative of the Fourth Amendment to the United States Constitution, and Section 10, Article II of the New Mexico Constitution." There is established New Mexico law interpreting Article II, Section 10 more expansively than the Fourth Amendment. *See, e.g., Campos II; Attaway; Gutierrez; Cordova.*

25. Therefore, Gomez need not have asserted in the trial court that Article II, Section 10 should be interpreted differently from the Fourth Amendment. In oral argument before the trial court, he referred to *Coleman,* thus alerting the court and the opposing party to the constitutional principle that, in the absence of exigent circumstances, the

---

**3.** We decline to follow those states that require litigants to address in the trial court specified criteria for departing from federal interpretation of the federal counterpart. However, we note that several state courts have outlined a number of criteria that trial counsel in New Mexico might profitably consult in framing state constitutional arguments. *See, e.g., Hunt,* 450 A.2d at 962–67 (N.J.1982) (Handler, J., concurring); *People v. P.J. Video, Inc.,* 68 N.Y.2d 296, 508 N.Y.S.2d 907, 501 N.E.2d 556 (N.Y.1986); *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 895 (1991); *State v. Jewett,* 146 Vt. 221, 500 A.2d 233, 236–38 (1985).

police must obtain a warrant to search a vehicle and closed containers therein. Gomez's written and oral references combine to satisfy the first step required under Rule 12–216. *See Garcia v. LaFarge,* 119 N.M. 532, 540–41, 893 P.2d 428, 436–37 (1995) (reviewing due process claim on appeal where arguments in trial court, though lacking in specificity, "were sufficient to alert the trial court and opposing counsel to the substance of the argument being made").

■ 26. The Court of Appeals faults Gomez for not citing *Campos II* to the trial court. The Court of Appeals rationalized that "a Defendant may not rely on the State to preserve issues for appeal," citing *State v. James,* 85 N.M. 230, 233, 511 P.2d 556, 559 (Ct.App.1973) (refusing to address defendant's argument that jury instruction was incorrect where only the State objected to the instruction at trial). Here, however, Gomez based his motion to suppress on the absence of exigent circumstances in violation of Article II, Section 10. The State's reference to *Campos II* significantly informed the issue raised by Gomez. Opposing counsel has no duty to invoke a ruling, but all counsel have a duty to aid the court in a fair resolution of an issue once invoked. Rule 16–303 NMRA 1996 provides that "[a] lawyer should not knowingly ... fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."

27. In addition to raising the exigency principle, Gomez developed the facts needed for a ruling. The State questioned Deputy Payne in considerable depth about the circumstances leading up to and following the search. Payne's testimony on cross-examination directly addressed the question concerning exigencies. On re-direct and on re-cross-examination, questions and answers squarely focussed on exigent circumstances. Whereas in *De Jesus–Santibanez* and *State v. Ramzy,* 116 N.M. 748, 867 P.2d 418 (Ct. App.1993), the opposing party was deprived of the chance to develop facts relevant to the claim, in this case all relevant facts are present in the record to determine the existence of exigent circumstances. The State's reference to *Campos II* and argument that exigent circumstances existed in this case indicate the State believed the factual record was sufficient to support a finding of exigent circumstances.

28. Furthermore, the record indicates the trial court ruled on the issue of exigent circumstances. The judge requested a copy of the *Coleman* opinion and read it. In rebuttal, the State maintained that exigent circumstances were not required but were present in this case. The judge ruled from the bench:

> Reading *Coleman,* I certainly don't disagree with the conclusion and holding in *Coleman,* but I think the facts are different than this particular case. It talks about exigent circumstances, in that particular case, it dealt with something totally different than what we have here and, like I said, I think for the facts of that case or others close to it, it is certainly correct.

Finding Deputy Payne's testimony regarding the conditions justifying the warrantless search of Gomez's automobile to be credible, the trial court denied Gomez's motion.

■ 29. Neither of the primary purposes animating Rule 12–216(A) is served by precluding Gomez from raising Article II, Section 10 on appeal. We require parties to assert the legal principle upon which their claims are based and to develop the facts in the trial court primarily for two reasons: (1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector. *See Garcia v. LaFarge,* 119 N.M. at 540, 893 P.2d at 436.

30. In this case, Gomez's failure to cite to our cases interpreting Article II, Section 10 more expansively than the Fourth Amendment did not operate to prejudice the State in any way. *See id.* at 541, 893 P.2d at 437 (observing that these rules are "instruments for doing justice" and "not an end in themselves"). The trial court is charged with knowing and correctly applying established New Mexico precedent interpreting the state constitution. Where New Mexico courts

have taken a different path than federal courts, our precedent governs regardless of whether a party cites specific cases in support of a constitutional principle, so long as the party has asserted the principle recognized in the cases and has developed the facts adequately to give the opposing party an opportunity to respond and to give the court an opportunity to rule.

■■■ 31. The rule announced today is also a recognition of realities separating trial and appellate practice. Although we expect trial counsel to be well-advised of state constitutional law on a particular subject affecting his or her client's interests, we also recognize that the arguments a trial lawyer reasonably can be expected to articulate on an issue arising in the heat of trial are far different from what an appellate lawyer may develop after reflection, research, and substantial briefing. It is impractical to require trial counsel to develop the arguments, articulate rationale, and cite authorities that may appear in an appellate brief. Here, the record establishes unambiguously that Gomez invoked a principle recognized under the New Mexico Constitution, the facts needed for a ruling on exigent circumstances were developed, and the trial court made a ruling on exigent circumstances. Therefore, the issue was preserved.[4]

32. The rule announced in this case represents a refinement of the requirements previously applied by our appellate courts. In *Sutton,* 112 N.M. at 454, 816 P.2d at 523, the Court of Appeals stated

> References to the state constitution, without some discussion or argument concerning the scope of its protections, are not enough to alert the trial court to the issue of a possible difference between the rights afforded by the state constitution and those provided by the fourth amendment.

This rule has been followed in a number of cases. *See, e.g., De Jesus–Santibanez,* 119

N.M. at 580, 893 P.2d at 476; *State v. Ongley,* 118 N.M. 431, 432, 882 P.2d 22, 23 (Ct. App.1994); *State v. Montoya,* 116 N.M. 297, 301, 861 P.2d 978, 982 (Ct.App.1993); *State v. Ramos,* 115 N.M. 718, 721–22, 858 P.2d 94, 97–98 (Ct.App.1993); *State v. Allen,* 114 N.M. 146, 147, 835 P.2d 862, 863 (Ct.App. 1992). The rule in *Sutton* appears to have provided adequate guidance in the cases in which it has been applied, when state constitutional claims were either novel or interchangeable with federal constitutional claims, but this case requires a refinement of that rule. Our own constitutional law has matured, and we today adopt preservation requirements that reflect that fact. To the extent *Sutton* and any of the cases that have relied on *Sutton* are irreconcilable with this opinion, they are hereby modified.

33. *Search and seizure.* We turn to the substantive question which was not reached by the Court of Appeals: whether the State must make a particularized showing of exigent circumstances to justify the warrantless search of an automobile. In accordance with our interstitial approach, before examining our state constitution we look at the applicable federal law to determine whether the protection sought here is accorded motorists under federal constitutional law.

■■■ 34. *—Federally-recognized automobile exception.* Under current federal interpretation of the Fourth Amendment, the constitutional protection against warrantless searches and seizures admits of a bright-line exception that permits a warrantless search of a lawfully stopped automobile and any closed containers within the automobile. *California v. Acevedo,* 500 U.S. 565, 575–76, 111 S.Ct. 1982, 1988–89, 114 L.Ed.2d 619 (1991); *United States v. Ross,* 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572 (1982). *See also Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (creating an exception to the warrant requirement for searches of automobiles).

---

4. Even if Gomez's contentions before the trial court had failed to preserve the state constitutional claim, we could nevertheless consider it because freedom from illegal search and seizure is a fundamental right. *See* Rule 12–216(B)(2). *See also DesGeorges v. Grainger,* 76 N.M. 52, 59, 412 P.2d 6, 11 (1966); Robert L. Stern, *Appellate* *Practice in the United States* § 3.1 at 65 (2d ed. 1989). *Cf. Sutton,* 112 N.M. at 454, 816 P.2d at 523 (discussing search and seizure protections under Article II, Section 10 as matter of general public interest despite defendant's failure to preserve claim for appellate review).

The exception for automobiles is grounded in two propositions: (1) the inherent mobility of automobiles creates exigent circumstances, *Chambers v. Maroney*, 399 U.S. 42, 50–51, 90 S.Ct. 1975, 1980–81, 26 L.Ed.2d 419 (1970); and (2) a lesser expectation of privacy attaches to the contents of a motor vehicle because of "the pervasive regulation of vehicles capable of traveling on the public highways," *California v. Carney*, 471 U.S. 386, 392, 105 S.Ct. 2066, 2069–70, 85 L.Ed.2d 406 (1985). Under the federal bright-line exception, Gomez's motion to suppress fails. In *State v. Pena*, 108 N.M. 760, 762, 779 P.2d 538, 540 (1989), and *State v. Apodaca*, 112 N.M. 302, 305–06, 814 P.2d 1030, 1033–34 (Ct.App.1991), New Mexico courts, relying on *Ross*, acknowledged that a warrantless search of an automobile and its contents is permitted under the Fourth Amendment.

35. —*Pena is not controlling precedent.* The State has argued that our prior decision in *Pena* is controlling in this case and does not require a showing of exigent circumstances to search an automobile without a warrant so long as the probable cause standard is met. *Pena* represents the high-water mark of our interpretation of Article II, Section 10 in lock-step with United States Supreme Court interpretation of the Fourth Amendment. In *Pena*, we treated the two search and seizure provisions interchangeably and in effect regarded Fourth Amendment precedent as binding on us in interpreting Article II, Section 10. Since *Cordova*, decided seven months after *Pena*, we have given independent meaning to the protections from unreasonable searches and seizures articulated in Article II, Section 10. The fact that *Pena* would not require a showing of exigent circumstances to justify a warrantless search of an automobile does not compel us to hold that such a showing is not required. We no longer follow United States Supreme Court interpretation of the Fourth Amendment in our interpretation of Article II, Section 10. Therefore, *Pena* is not controlling in this case.

■ 36. —*New Mexico search and seizure jurisprudence.* Article II, Section 10 of the New Mexico Constitution states "[t]he people shall be secure ... from unreasonable searches and seizures, and no warrant shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause." In interpreting our search and seizure provision, this Court consistently has expressed a strong preference for warrants. *See Campos II*, 117 N.M. at 159, 870 P.2d at 121; *Gutierrez*, 116 N.M. at 444, 863 P.2d at 1065; *Cordova*, 109 N.M. at 216, 784 P.2d at 35. As stated in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977):

> The judicial warrant has a significant role to play in that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer "engaged in the often competitive enterprise of ferreting out crime." Once a lawful search has begun, it is also far more likely that it will not exceed proper bounds when it is done pursuant to a judicial authorization "particularly describing the place to be searched and the persons and things to be seized." Further, a warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.

*Id.* at 9, 97 S.Ct. at 2482 (citations omitted).

37. The State urges us to relax the warrant requirement in cases such as this on the grounds that there is no net benefit to the citizen by requiring a warrant where the officer has probable cause to search the vehicle. The State cites Oregon authority for the proposition that, assuming police have probable cause to search a vehicle, "the privacy rights of our citizens are subjected to no greater governmental intrusion if the police are authorized to conduct an immediate on-the-scene search of the vehicle than to seize the vehicle and hold it until a warrant is obtained." *State v. Brown*, 301 Or. 268, 721 P.2d 1357, 1361 (1986).

38. By injecting a neutral magistrate into the process of searching a vehicle or containers within it, however, the law provides a layer of protection from unreasonable searches and seizures. By compelling the

officer to show to a neutral magistrate facts from which that impartial judicial representative could conclude that probable cause exists to justify searching that vehicle and its containers for contraband, the law enforcement organizations of this state are prevented from allowing the competitive pressures of fighting crime to compromise their judgment about whether or not to carry out a given search.

▓▓▓ 39. —*Warrantless searches of automobiles require a showing of exigent circumstances.* In accordance with the principles underlying Article II, Section 10 and the cases over the last seven years interpreting that provision independently from its federal counterpart, we announce today that a warrantless search of an automobile and its contents requires a particularized showing of exigent circumstances. In *State v. Copeland,* the Court of Appeals defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.1986).

▓▓▓ 40. A warrantless search is valid where the officer reasonably has determined that exigent circumstances exist. A warrantless search is invalid if, in the court's estimation, the officer's judgment that exigent circumstances existed was not reasonable. The inquiry is an objective test, not a subjective one, into whether a reasonable, well-trained officer would have made the judgment this officer made. If reasonable people might differ about whether exigent circumstances existed, we defer to the officer's good judgment. On appeal, we may review de novo the trial court's determination of exigent circumstances.

▓▓▓ 41. —*Application of the rule.* In this case, Deputy Payne felt he and the other officers had to be careful in the presence of the party-goers who were milling about at the scene. He believed that the car would not have remained at the scene if he had left it unattended to obtain a warrant and he did not believe taking the car keys would have sufficed to secure the car. It was late at night and he did not know when a tow truck would arrive. Since he had probable cause to believe the car contained contraband and perhaps other evidence of illegal activity, and he believed the evidence would be destroyed or removed unless he searched the vehicle immediately, the search was reasonable despite the absence of a judicial warrant.

42. In reviewing the officer's judgment concerning the presence of exigent circumstances, we will keep in mind this Court's approach in *State v. Ortega,* 117 N.M. 160, 870 P.2d 122 (1994). In that case we held that "if an officer has good reason to believe that evidence will be destroyed, that officer is justified in making an unannounced entry into a person's residence. 'Good reason' will be defined by whether it was objectively reasonable for the officer to believe that evidence is being or will be destroyed based upon the particular circumstances surrounding the search." *Id.* at 160, 870 P.2d at 125. Where the officer has an objectively reasonable basis for believing exigent circumstances require an immediate warrantless search, then the search is valid. In this case, it was not unreasonable for Deputy Payne to believe a warrantless search was required to avoid removal or destruction of evidence of illegal activity which he had probable cause to believe was inside the car.

43. It would have been reasonable—and perhaps preferable—for Deputy Payne to have refrained from searching the vehicle and closed containers within it until after it was impounded, at which point he could have obtained a warrant. This course of action would have shown more deference to the warrant process. However, while this would have been acceptable and even desirable, failure to have done so does not affect our ruling that it was reasonable for Payne to search the vehicle under circumstances giving rise to a reasonable belief that exigencies required an immediate search. That is, in this case, he was not required to obtain a warrant to search Gomez's automobile because it was reasonable for him to believe that exigencies required a warrantless search. The fact that a different course of action also would have been reasonable does not mean that Payne's conduct was unreasonable.

44. —*Reasons for departing from federal precedent.* Quite simply, if there is no *reasonable* basis for believing an automobile will be moved or its search will otherwise be compromised by delay, then a warrant is required. While it may be true that in most cases involving vehicles there will be exigent circumstances justifying a warrantless search, we do not accept the federal bright-line automobile exception.

45. There is some tension between the blanket automobile exception and the U.S. Supreme Court's recent pronouncements. In *Ohio v. Robinette,* —— U.S. ——, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996), the Court states, "[W]e have eschewed bright-line rules [in applying the totality-of-circumstances test], instead emphasizing the fact-specific nature of the reasonableness inquiry.... [W]e expressly disavowed any 'litmus-paper test' ... in recognition of the 'endless variations in the facts and circumstances' implicating the Fourth Amendment." We regard the automobile exception as a failure to recognize such variations.

46. *Conclusion.* Gomez preserved the state constitutional issue on appeal where he raised the principle of exigent circumstances required under Article II, Section 10 of the New Mexico Constitution and where the facts necessary to the state constitutional inquiry were developed in the trial court. A warrantless search of an automobile and closed containers within it is invalid under Article II, Section 10 unless it is reasonable for the officer to believe that exigent circumstances exist to justify a departure from the warrant requirement. In this case, it was reasonable for Deputy Payne to believe exigent circumstances required a search of Gomez's automobile without a warrant. Denial of Gomez's motion to suppress is affirmed.

47. **IT IS SO ORDERED.**

FRANCHINI and MINZNER, JJ., concur.

