BOSSON, Justice (specially concurring). {49} I concur in the opinion of the majority. I write separately solely on the issue of preservation. {50} In addressing any claim under our state Constitution, the threshold issue is always preservation. Given the unusual posture of this particular case, I agree with the majority that Defendant need not have preserved such a claim at the trial level. However, the Court of Appeals took a different view, and held that Defendant did not do enough to preserve his state constitutional argument. For its part, the State spent much of its brief arguing that Defendant did not preserve his argument in accordance with State v. Gomez, 1997-NMSC-006, ¶¶ 22-23, 122 N.M. 777, 932 P.2d 1. I disagree with both the State and the Court of Appeals on this point. I write separately to stimulate (hopefully) a dialogue regarding what we reasonably should continue to demand today — over 12 years after Gomez — to preserve a search and seizure argument under Article II, Section 10 of the New Mexico Constitution. {51} In Gomez, this Court set forth a bifurcated framework — now familiar to us all — for preservation of a state constitutional claim with a federal analog. 1997-NMSC-006, ¶¶ 22-23. “[T]he requirements for preserving the claim for appellate review depend on current New Mexico precedent construing [the] state constitutional provision.” Id. ¶ 22. Where established precedent construes the provision more broadly than its federal counterpart, the claim is preserved by “(1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue.” Id. Where there is no precedent interpreting a state constitutional right differently than its federal equivalent, a litigant must meet a higher burden. Id. ¶23. In these cases, “a party also must assert in the trial court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision.” Id. (emphases omitted) (footnote omitted). {52} In our state jurisprudence, a plethora of precedent already interprets Article II, Section 10 more expansively than the Fourth Amendment. See, e.g., Gomez, 1997-NMSC-006, ¶¶ 33-40 (requiring exigent circumstances to justify the warrantless search of an automobile, contrary to United States v. Ross, 456 U.S. 798, 800, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), modified by Arizona v. Gant, — U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)); Campos v. State, 117 N.M. 155, 158, 870 P.2d 117, 120 (1994) (declining to adopt the “blanket federal rule” that all warrantless arrests of felons where based on probable cause and in public places are constitutionally permissible); State v. Gutierrez, 116 N.M. 431, 432, 863 P.2d 1052, 1053 (1993) (rejecting the good faith exception to the exclusionary rule)). Thus, according to the plain language of Gomez, to preserve his claim Defendant needed only to “assert[] the constitutional principle that provides the protection sought under the New Mexico Constitution” and “show[] the factual basis needed for the trial court to rule on the issue.” 1997-NMSC-006, ¶ 22; see also State v. Granville, 2006-NMCA-098, ¶ 13, 140 N.M. 345, 142 P.3d 933 (“When existing precedent construes a state constitutional provision as providing broader protection than its federal counterpart, the preservation of the state constitutional claim requires no more than preservation of any other claim for appellate review.”). He was not required to persuade the court why Article II, Section 10 should be interpreted more expansively or otherwise “provide reasons.” {53} Defendant asserted the constitutional principle at issue when he moved to suppress all evidence seized and cited specifically to both the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution. Defendant also showed the factual basis for his claim: the officer’s narrative was in evidence before the trial court. Thus, Defendant satisfied both of the Gomez criteria: he specifically invoked the state constitutional provision at issue and showed the factual basis for his claim. Because our more expansive interpretation of search and seizure under the state Constitution is well-known, then under Gomez Defendant need not have done more to preserve his claim. {54} However, both the State and our Court of Appeals disagree, reading Gomez too narrowly, in my view. Rather than looking at the relevant constitutional provision, as mandated by Gomez, they focus on the particular claim or principle asserted by Defendant. For example, in framing the issue, the Court of Appeals stated that “[o]ur courts have not yet decided whether our state constitution affords greater protection than the Fourth Amendment in determining when a person who does not comply with police orders is seized.” State v. Garcia, 2008-NMCA-044, ¶ 9, 143 N.M. 765,182 P.3d 146. In other words, Defendant did not make a specific argument below to distinguish Hodari D. from our state Constitution. While I recognize that this confusion may stem from Gomez employing both the term “provision” and “principle” in its analysis, compare Gomez, 1997-NMSC-006, ¶2 with ¶ 22,1 believe that Gomez should properly be interpreted as turning on the prior treatment of the constitutional provision at issue. {55} The reading given Gomez by the State and the Court of Appeals is unnecessarily restrictive. In practical effect, it could require litigants to meet the higher Gomez burden each time a new argument or fact pattern under search and seizure is brought before a state court. The party would have to remind the court that Article II, Section 10 is interpreted more expansively and provide reasons for the court to do so. This is unduly burdensome in the context of search and seizure, and for the reasons that follow, unnecessary. That reading also conflicts with at least some of our precedent which, admittedly, is at times inconsistent. See State v. Cardenas-Alvarez, 2001-NMSC-017, ¶ 13, 130 N.M. 386, 25 P.3d 225 (“While Defendant failed to specify the article and section number of the relevant constitutional provision, he clearly alerted the court to the constitutional principle (the prohibition against unreasonable searches and seizures) under which he sought protection [under the state Constitution].”). Perhaps we should clarify that confusion. {56} I recognize this is not the only way to interpret Gomez, and Gomez itself is capable of more than one meaning on this subject. Perhaps it is time for a new look. After all, Gomez is not inscribed in granite; it is not part of the state Constitution. It is merely a means to an end. In its text, Gomez overturned a prior iteration of preservation under the state Constitution on which the Court of Appeals had correctly relied when it rejected the search and seizure argument for lack of preservation. See State v. Sutton, 112 N.M. 449, 454, 816 P.2d 518, 523 (Ct.App.1991). Just as by 1997, Sutton no longer served the purposes of justice and an independent development of our state Constitution, so too we should probably take a fresh look every decade or so at whether the preservation requirements of Gomez continue to serve us as well. {57} To begin the analysis of the State’s position, it is worth noting what should be obvious to everyone. We cannot allow the development of our state Constitution to be retarded by overly burdensome, hyper-technical, and impractical preservation requirements. As New Mexico’s highest court, it is our duty and privilege to interpret and develop the New Mexico Constitution. In a government of dual sovereigns, it is imperative that our state Constitution develop to its full potential and protect the rights of our citizens where we deem federal law lacking. Cf. Granville, 2006-NMCA-098, ¶ 19 (“New Mexico courts independently analyze state constitutional guarantees when federal law begins to encroach on the sanctity of those guarantees.” (Internal quotation marks and citation omitted.)). A heightened preservation requirement for the state Constitution would impede us from addressing legitimate state constitutional concerns. We should reject any “super preservation requirement” or highly technical construction that would, in effect, hold our state Constitution hostage to the vagaries of trial counsel competency. I note, for example, that Defendant’s bare citation to the Fourth Amendment, without more, adequately preserved his search and seizure claim under the United States Constitution. Why impose a higher burden on our state litigants to invoke our own Constitution? {58} Further, nearly twenty years have passed since we first breathed independent life into Article II, Section 10 in State v. Cordova, and many similar holdings have followed in its wake. 109 N.M. 211, 217, 784 P.2d 30, 36 (1989) (retaining the AguilarSpinelli test for analyzing the reliability of informant information providing the basis for probable cause despite the federal courts’ abandonment of the test in favor of an inquiry into the totality of the circumstances). It is now common knowledge that our own protection against unreasonable searches and seizures is more robust than its federal analog. Because we charge our judges with knowledge of the law, a simple invocation of Article II, Section 10, alongside a sufficient presentation of the facts, suffices to alert the mind of the trial court that a litigant is seeking broader protection from unreasonable searches and seizures under the New Mexico Constitution. {59} For example, in this case, Defendant’s motion to suppress invoked Article II, Section 10 without elaboration. Reading the motion, a trial court should be aware that defense counsel has in mind a separate argument under a provision of the state Constitution that often, but not always, is asserted more expansively than its federal equivalent. For what other purpose would one assert Article II, Section 10 than to tell the court, in a kind of litigator’s shorthand, that, “[i]f my Fourth Amendment argument does not persuade you, then let’s move on to the state constitution and its added protections for the rights of my client?” {60} What is not clear from the bare motion to suppress is the specific ground or argument; in this case, the reasoning of Hodari D. and why we should break with that case under our state Constitution. Clearly, the better practice is for an attorney to make a specific argument to buttress a claim under the state Constitution. In a case like ours, for example, if Hodari D. were the obstacle under the Fourth Amendment, then a sound argument from defense counsel would explain the shortcomings of that opinion and why the principles that animate our state Constitution lead to a better result. A good attorney would never leave that argument to chance. {61} However, the harsh reality of trial practice does not make it practicable in every case for counsel to be so thorough. This Court has seen far too many instances in which trial counsel simply overlooked the need for argument to explain the theory of the case. Yet, preservation has never been synonymous with the higher standard of best practices in the profession. I cannot say it better than Gomez, 122 N.M. at 786, 932 P.2d at 10: Although we expect trial counsel to be well-advised of state constitutional law on a particular subject affecting his or her client’s interests, we also recognize that the arguments a trial lawyer reasonably can be expected to articulate on an issue arising in the heat of trial are far different from what an appellate lawyer may develop after reflection, research, and substantial briefing. It is impractical to require trial counsel to develop the arguments, articulate rationale, and cite authorities that may appear in an appellate brief. In other words, on the appellate bench, we get to review in the cool of the night what trial counsel and the trial court must do in the heat of the day. {62} It does not seem fair to place the burden entirely upon the shoulders of overburdened trial counsel. Under these circumstances, it would not ask too much of the trial court to inquire of counsel the nature of the argument asserted under Article II, Section 10. If, for example, Hodari D. were the problem for Defendant, then the court could ask counsel directly to explain why that case should not be followed under Article II, Section 10. This would not take much effort. We recently wrote extensively about Hodari D. and the Fourth Amendment, while simultaneously flagging our own concern about “the possibility that Article II, Section 10 may require different standards than those set forth in ... Hodari D.” State v. Harbison, 2007-NMSC-016, ¶ 16 n. 3, 141 N.M. 392, 156 P.3d 30. {63} Finally, preservation is not an end in itself, but a means to a fair outcome. In the absence of manifest unfairness to either side, such as an incomplete factual record, citation of Article II, Section 10 in a search and seizure case should suffice; it should alert the trial court to the need to address both the state and the federal constitutions before it rejects a motion to suppress. And even if the court is not alerted, of what real import is that to the resolution of a pure question of law? The factual record here is not subject to any material dispute. This Court can decide the Hodari D. issue whether or not the trial court addressed it. While in a perfect world the trial court should address each issue first, that aspiration should not be determinative. The statewide interest in development of our state Constitution tips the balance in favor of proceeding, and we should not hesitate to do so.