This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38359**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PAUL JOHN MATAMOROS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant Paul John Matamoros appeals the denial of his motion to suppress evidence obtained from an inventory search of a vehicle he operated but did not own, as well as a statement he made during his arrest. After his motion was denied, Defendant pleaded no contest to trafficking by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20 (2006), but reserved his right to appeal. On appeal, Defendant raises two issues: (1) whether the decision to impound the vehicle violated the Fourth Amendment of the United States Constitution or Article II, Section 10

of the New Mexico Constitution; and (2) whether the arresting deputy's pre-*Miranda* questioning of Defendant violated his right to be free from self-incrimination. For reasons that follow, we affirm.

## DISCUSSION

## I.      The Decision to Impound

**{2}**     Defendant does not challenge the scope of the inventory search of the vehicle. Instead, he asserts the decision to impound the vehicle was unconstitutional absent attempts to find reasonable alternatives. "The constitutionality of a search or seizure is a mixed question of law and fact and demands de novo review." *State v. Jim*, 2022-NMCA-022, ¶ 7, 508 P.3d 937 (internal quotation marks and citation omitted). "When a defendant invokes our inherent power as a separate sovereign in our federalist system of government to provide more liberty under the New Mexico Constitution than is mandated by the United States Constitution, we utilize the interstitial approach to constitutional interpretation set forth in *State v. Gomez*, 1997-NMSC-006, ¶¶ 19, 22-23, 122 N.M. 777, 932 P.2d 1." *Id.* (internal quotation marks and citation omitted). Under this analysis, we "answer three questions: (1) whether the right asserted by the defendant is protected under the federal constitution, (2) whether the defendant preserved the state constitutional claim, and (3) whether there exists any one of three reasons for diverging from federal precedent." *Id.* Ultimately, we disagree with Defendant because we conclude that the Fourth Amendment did not prohibit the arresting deputy from impounding the vehicle, and Defendant failed to develop his argument that the search of the vehicle was unlawful under the New Mexico Constitution.

## A.      The Fourth Amendment

**{3}**     The Fourth Amendment mandates that searches and seizures must be reasonable. *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. "Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted). In order to prove that a warrantless search is reasonable, the state has the burden of showing the search was justified by an exception to the warrant requirement. *See State v. Baldonado*, 1992-NMCA-140, ¶ 19, 115 N.M. 106, 847 P.2d 751. Inventory searches are a well-recognized exception to the Fourth Amendment's warrant requirement. *See Weidner*, 2007-NMCA-063, ¶ 6; *see also Jim*, 2022-NMCA-022, ¶ 8 ("Nearly fifty years ago, the United States Supreme Court legitimized the 'routine practice of securing and inventorying' the contents of an automobile after it had been impounded." (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)).

**{4}**     Our Supreme Court has concluded that for the inventory search exception to apply under the Fourth Amendment, "there must be *some* nexus between the arrest and the reason for the impounding," but "that nexus need only be reasonable." *State v.*

*Williams*, 1982-NMSC-041, ¶ 6, 97 N.M. 634, 642 P.2d 1093. "[N]o compelling need must be present to justify impoundment of a vehicle incident to an arrest." *Id.* If a defendant possesses property at the time of an arrest, "then a reasonable nexus exist[s] between the arrest and the seizure and inventory search of the [property]." *State v. Davis*, 2018-NMSC-001, ¶ 16, 408 P.3d 506. "[A] defendant 'possesses' any object that the defendant loses control over as a consequence of arrest *and* where that loss of control gives rise to the possibility that the object might be lost, stolen, or destroyed and the police potentially held liable for the loss, theft, or destruction." *Id.* ¶ 18 (emphasis added).

{5}     Here, there is a reasonable nexus between Defendant's arrest and the reason for impounding the vehicle. Defendant lost control of the vehicle because of his arrest. Although Defendant had just parked the vehicle at a private residence, it was not registered to Defendant, the passenger, or the persons residing at the private residence. Without permission from the registered owner to leave the vehicle at a private residence, leaving it would present a risk that the vehicle could have been lost, stolen, or destroyed. *See id.*; *see also State v. Boswell*, 1991-NMSC-004, ¶¶ 2, 12-13, 111 N.M. 240, 804 P.2d 1059 (holding that there was a reasonable nexus between the defendant's arrest and seizure of his wallet for an inventory search when he was arrested at a grocery store and his wallet was left there, even though the defendant offered to have a friend pick it up). Accordingly, there was a reasonable nexus between Defendant's arrest and the reason for impounding the vehicle.

{6}     Defendant urges us to conclude otherwise—that the vehicle was safe because it was lawfully parked on private property. He asks us to adopt the analysis provided by the Tenth Circuit Court of Appeals in *United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015), which departs from other federal circuit courts, and to determine that the decision to impound was a pretext for a drug search. *See id.* at 1249-50 (examining a non-exclusive list of factors to determine "whether an impoundment is justified by a reasonable and legitimate, non-pretextual community-caretaking rationale"). Defendant did not present this argument to the district court and thus failed to preserve it. *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)). Further, Defendant's argument invites us to construe the reasonable nexus requirement as one which "must be read in the way the Tenth Circuit reads it." That is, there must be "a nexus between the car and the crime for which the suspect is arrested." We are bound by our Supreme Court's precedent, which articulates the extent of our analysis as to whether the decision to impound a vehicle is permissible under the Fourth Amendment. *See State v. Manzanares*, 1983-NMSC-102, ¶ 3, 100 N.M. 621, 674 P.2d 511 (citing *Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778); *see also Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 30, 345 P.3d 1086 ("Appeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law . . . ."), *rev'd on other grounds*, 2016-NMSC-035, 385 P.3d 619. Defendant's proposed analysis, however, would contradict our Supreme

Court's conclusion in *Williams* that a "compelling need" to impound is not required, and "[t]he fact that the vehicle was legally parked and *could* have been left there does not make the impoundment improper." 1982-NMSC-041, ¶¶ 6-7. Consequently, we agree with the district court that the Fourth Amendment did not require suppressing the evidence from the inventory search of the vehicle.

## B. Article II, Section 10

**{7}** The search Defendant complains of is not protected by the Fourth Amendment, and so we next consider whether Defendant preserved review of the issue under the New Mexico Constitution. *See Jim*, 2022-NMCA-022, ¶ 7; *see also State v. Tapia*, 2018-NMSC-017, ¶ 12, 414 P.3d 332 ("Under the interstitial approach . . . we ask first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached." (internal quotation marks and citations omitted)).

**{8}** "It is well-established that Article II, Section 10 provides more protection against unreasonable searches and seizures than the Fourth Amendment." *State v. Leyva*, 2011-NMSC-009, ¶ 51, 149 N.M. 435, 250 P.3d 861. Accordingly, Defendant "need only '(1) assert the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) show the factual basis needed for the [district] court to rule on the issue' in order to preserve his claim." *Jim*, 2022-NMCA-022, ¶ 12 (alterations omitted) (quoting *Gomez*, 1997-NMSC-006, ¶ 22)). Here, Defendant asserted in his motion to suppress that the inventory search violated Article II, Section 10 of the New Mexico Constitution and developed the facts supporting his argument in the motion and at the suppression hearing. The district court also denied the motion on Fourth Amendment and Article II, Section 10 grounds. We conclude that Defendant's Article II, Section 10 claim was preserved.

**{9}** Nonetheless, Defendant has not adequately developed an argument on appeal concerning the third step in our interstitial approach—whether there is any one of three reasons for diverging from federal precedent: "flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *Jim*, 2022-NMCA-022, ¶ 15 (quoting *State v. Cardenas-Alvarez*, 2011-NMSC-017, ¶ 14, 130 N.M. 386, 25 P.3d 225). Defendant continues to advocate that we apply the Tenth Circuit's analysis in *Sanders*, but fails to explain why such an approach is called for under our state constitution using the interstitial approach. Defendant's argument otherwise consists of repeated assertions, some of which are mere speculation, that the decision to impound the vehicle was unreasonable. However, those assertions are untethered to any standard for us to determine whether it was so.

**{10}** Defendant's generalized statements that Article II, Section 10 provides greater protections against automobile searches alone do not establish that, in this case, the decision to impound the vehicle was unconstitutional. For instance, Defendant points us to *State v. Bramlett* to support his contention that the arresting deputy should have left the vehicle since it was lawfully parked on private property, or at least contacted its owner to retrieve it. 1980-NMCA-042, 94 N.M. 263, 609 P.2d 345, *overruled on other*

*grounds by Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 8, 105 N.M. 771, 737 P.2d 552. *Bramlett* is inapposite. *Bramlett* dealt with the scope of an inventory search, where we concluded that the search was investigatory due to the "intensity of the search" combined with the fact that the vehicle was left alone for two hours after the defendant's arrest. *Id.* ¶¶ 12, 16. Here, Defendant does not complain about the "intensity of the search" nor the time that passed before the vehicle was inventoried. While we intimated in *Bramlett* that contacting the defendant's father, who was the vehicle's registered owner, "obviated the necessity for an 'inventory search,'" we did not conclude that contacting a third party to pick up their vehicle is a constitutional requirement before impounding. *See id.* ¶ 16. Defendant has not adequately developed an argument that such a requirement now exists.

**{11}** Defendant also attempts to extrapolate from *Jim* that Article II, Section 10 requires the arresting deputy to either leave the vehicle with people who did not own it or call and wait for its owner to retrieve it. However, *Jim* addressed the scope of an automobile search—in that case, the parties did not contest the arresting officer's authority to impound the vehicle. 2022-NMCA-022, ¶¶ 13-14. Moreover, Defendant offers no explanation for why the additional protections under Article II, Section 10, as described in *Jim*, should be extended further to protect against the deputy's decision to impound the vehicle in this case.

**{12}** Given the deficiencies above, we decline Defendant's invitation to consider whether our analysis under Article II, Section 10 should diverge from federal law. "There is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (alterations, internal quotation marks, and citations omitted). Defendant having failed to provide us with a fully developed argument supporting the reasons for departing from federal law, we presume the district court correctly concluded that the evidence from the inventory search should not have been suppressed pursuant to Article II, Section 10.

## C. Statement Made During Arrest

**{13}** We next address whether Defendant's statement that he had syringes and a sharps container in his pocket should have been suppressed. Specifically, Defendant argues that his response to the deputy's question, "Do you have anything that is going to stick me, poke me, [or] hurt me?" should have been suppressed because Defendant was not advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court found that Defendant's right to be free from self-incrimination was not violated because Defendant was not being interrogated. Rather, the district court determined that the deputy's question "was designed to protect the officer, not elicit incriminating information."

**{14}** "Whether facts support an exception to the *Miranda* requirement is a question of law" we review de novo. *State v. Widmer*, 2020-NMSC-007, ¶ 11, 461 P.3d 881 (internal quotation marks and citation omitted). "The federal and state constitutional provisions

protect against self-incrimination and require, at a minimum, that before any individual may be subjected to custodial interrogation, the individual must be made aware of various rights the courts have established to aid in protecting the right to be free from self-incrimination." *Id.* ¶ 12 (alteration, internal quotation marks, and citation omitted). "Interrogation occurs when an officer subjects an individual to questioning or circumstances which the officer knows or should know are reasonably likely to elicit incriminating responses." *Id.* ¶ 23 (internal quotation marks and citation omitted).

**{15}** At the outset, we disagree with the district court that Defendant was not under interrogation. We see little distinction between the deputy's question here and the question elicited in *Widmer*—where our Supreme Court determined the question, "Is there anything on your person that I should know about," subjected the defendant to custodial interrogation. *Id.* ¶¶ 16, 34. The parties do not dispute that Defendant was in custody when he was questioned, or that the deputy knew or should know that the question was reasonably likely to elicit an incriminating response. And like the question in *Widmer*, the deputy's question here was not typically attendant to arrest and custody, even if the deputy testified that he routinely asks it. *See id.* ¶ 21 ("An officer is not permitted to transform a question that constitutes interrogation into a question normally attendant to arrest and custody by simply making it a policy to ask specific questions during the process of custody or arrest."). Accordingly, Defendant should have been given a warning under *Miranda*.

**{16}** However, we agree with the State that the deputy's question was subject to the public safety exception expressed in *New York v. Quarles*, 467 U.S. 649, 655-56 (1984). *See Widmer*, 2020-NMSC-007, ¶¶ 3, 35 (concluding that the *Quarles* exception applied "because the question was not asked solely to elicit incriminating testimony"). "*Quarles* applies in a situation where the potential threat is to an officer's safety." *Id.* ¶ 37. Threats to officer safety encompass "concerns about weapons a suspect could use against an officer during a search," which include "sharp and bio-hazardous objects." *Id.* ¶ 38 (internal quotation marks and citation omitted). At the suppression hearing, the deputy testified that his question, "Do you have anything that is going to stick me, poke me [or] hurt me, anything of that nature?" was asked in the interest of officer safety, such as preventing infection of blood-borne pathogens. The deputy asked no other questions before Defendant responded. Similar to the officer in *Widmer*, the deputy here "limited the inquiry to items on Defendant's person including potentially hazardous items that could affect officer safety." *Id.* ¶ 39. Thus, the deputy's question was not "solely to elicit incriminating testimony." *Id.* ¶ 35.

**{17}** Defendant argues that *Widmer* is distinguishable because "there was no indication that [Defendant] was dangerous." However, whether an officer believes an arrestee to be dangerous is irrelevant to the analysis in *Widmer*. Our Supreme Court cautioned against such a "narrow" reading. *Id.* ¶ 40. Given the similarities between the facts here and those in *Widmer*, we conclude that the public safety exception to *Miranda* applied. Thus, the district court did not err in ruling that the statement need not be suppressed.

**CONCLUSION**

**{18}**     For the foregoing reasons, we affirm the district court's denial of Defendant's motion to suppress.

**{19}    IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**GERALD E. BACA, Judge**