151 P.3d 67 (2006)
2007-NMCA-005
STATE of New Mexico, Plaintiff-Appellant,
v.
Jesus Fraire JIMENEZ, Defendant-Appellee.
No. 25,056.
Court of Appeals of New Mexico.
November 8, 2006.
Certiorari Granted, January 2, 2007.
*68 Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellant.
John Bigelow, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellee.
Certiorari Granted, No. 30,140, January 2, 2007.

OPINION
CASTILLO, Judge.
{1} The State appeals from the trial court's order dismissing Defendant's pending second-degree murder charge. The basic question in this case is whether Defendant can be retried for second-degree murder in connection with one killing when the jury signed two verdict forms: one acquitting Defendant of second-degree murder and the other finding him guilty of second-degree murder. The State argues that double jeopardy does not apply to a valid conviction of second-degree murder and that the trial court therefore erred in dismissing the case based on double jeopardy. Defendant contends that the acquittal verdict governs and that he cannot be retried for the same offense. Based on the jury instructions and verdict forms in this case, the jury rejected one theory of second-degree murder but found Defendant guilt on the other theory. As to the theory on which the jury found guilt, Defendant can be retried. Accordingly, we reverse.
I. BACKGROUND
{2} After fighting with two men, Defendant armed himself with a rifle. Then, together with two codefendants, Defendant went to the home of Cecilia Gonzales, the mother of the two men with whom he had been fighting. Gonzales lived with her sister Maria Martinez. Defendant and Juan Meraz, one of the two codefendants, entered the mother's residence. Although Defendant denies making the statement, and the dissent does not mention it, Martinez testified that Defendant told Meraz, "Shoot them. Shoot them. Kill them[.]" Meraz shot and killed Gonzales as she stood in the kitchen. Defendant then left the scene, without assisting Gonzales or calling the police, to continue "partying" at his uncle's home.
{3} The grand jury indicted Defendant on seven criminal counts stemming from this incident. Count 1 of the indictment charged Defendant with first-degree murder, willful and deliberate killing, or, in the alternative, first-degree murder, felony murder. The willful and deliberate murder charge stated that Defendant did kill Gonzales with the deliberate intention to take away her life. The felony murder charge stated that Defendant did intentionally cause the death of Gonzales during the commission or attempted commission of aggravated burglary, a felony offense, under circumstances or in a manner dangerous to human life and that Defendant intended to kill or knew that his acts created a strong probability of death or great bodily harm.
{4} At trial, the jury was instructed on the elements of two theories of first-degree murder: first-degree willful and deliberate murder and felony murder. The jury was also *69 instructed on what can be perceived as two theories of second-degree murder. The jury was given a step-down instruction on second-degree murder as an included offense of first-degree murder by a deliberate killing. See UJI 14-250 NMRA. In addition, the jury was given a separate step-down second-degree murder instruction based on felony murder. Both second-degree murder instructions, however, required the jury to find that (1) Defendant killed the victim and (2) Defendant "knew that his acts created a strong probability of death or great bodily harm." The verdict forms followed the sequence of the jury instructions. There were separate verdict forms for each theory of first-degree murder and its corresponding lesser offense of second-degree murder. Defense counsel later characterized the instructions as "linear," meaning that the jury was instructed on deliberate murder and its included offenses and then on felony murder and its included offenses. According to the State, defense counsel would have preferred structuring the jury instructions based on the "Y" approach, in which the jury would first be instructed on both theories of first-degree murder and then would be given the step-down to second-degree murder if the jury could not reach a verdict on first-degree murder.
{5} The jury reached unanimous verdicts on all counts. The trial court read the verdicts into the record and then asked the attorneys if they wished to poll the jury; both parties stated that they did not want to poll the jury. The attorneys neither questioned the verdicts nor asked that the verdicts be clarified.
{6} The jury acquitted Defendant on first-degree murder by willful and deliberate killing, on second-degree murder "as charged as an included offense of first[-]degree murder by a deliberate killing" (second-degree deliberate intent murder), and on felony murder. The jury found Defendant guilty of second-degree murder "as an included offense of felony murder," as charged in the alternative to Count 1 (second-degree felony murder).
{7} Defendant appealed his conviction to this Court and raised nine issues in his docketing statement, none of which related to the two second-degree murder step-down instructions or verdict forms. This Court issued a memorandum opinion reversing and remanding the second-degree murder conviction on the ground that it was reversible error for the trial court to refuse to give Defendant's proposed lesser included instruction on involuntary manslaughter.
{8} After remand, the parties began to prepare for retrial. Defendant then filed a motion claiming that the State's prosecuting Defendant on the second-degree murder charge would violate his right to be free from double jeopardy because he had been acquitted of second-degree murder in the first trial. The State responded by arguing that the jury had convicted Defendant of second-degree murder and that there was no issue regarding innocence on that count. The State further argued that if error had occurred, it had been invited by the defensein that the defense had agreed to the jury instructions and verdict forms, had heard the verdicts read in open court, and had made no objection or argument. Among other contentions, the State maintained that the instructions and the verdict forms made it clear that the State was proceeding under two distinct theories of murder and that the jury's verdicts indicated its understanding of that distinction.
{9} After the hearing, the trial court issued a written order dismissing the case with prejudice, which stated, "[T]here is unitary conduct in this matter, the essential elements to be re-tried are identical to those for which the Defendant was acquitted, and there was not a waiver of the double jeopardy claim, if it is subject to such waiver." The State appeals from that order.
II. DISCUSSION
{10} The State contends that double jeopardy does not apply because the jury returned a conviction for second-degree murder and because acquittal cannot be implied from that conviction. The State further argues that the only way double jeopardy can be found in this case is by implying an acquittal from the convictionthat is, we must assume that the jury must have also meant to acquit on the second-degree felony murder *70 theory. Defendant limits his focus to the verdict form that acquits him of second-degree deliberate intent murder, and he asserts that an acquittal of one second-degree murder offense is an acquittal of the other second-degree murder offense because the offenses are the same and double jeopardy therefore prevents retrial. We disagree with this conclusion.
A. Standard of Review
{11} Double jeopardy claims are not waived and can be raised at any time before or after entry of a judgment. NMSA 1978, § 30-1-10 (1963). We review double jeopardy claims de novo. See State v. Schoonmaker, 2005-NMCA-012, ¶ 19, 136 N.M. 749, 105 P.3d 302, cert. granted, 2005-NMCERT-001, 137 N.M. 17, 106 P.3d 579.
B. New Mexico Constitution
{12} Defendant recognizes that the double jeopardy clause of the Fifth Amendment protects "a defendant against a second prosecution for the same offense after acquittal." Citing to State v. Gomez, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1, Defendant acknowledges that because his rights are protected under the federal constitution, "this Court need not examine the state constitutional claim." Nevertheless, Defendant argues that he preserved his state constitutional claim, as required in State v. Lynch, 2003-NMSC-020, ¶ 13, 134 N.M. 139, 74 P.3d 73, and further that this Court should read Lynch to allow Article II, Section 15, to be interpreted more expansively than the double jeopardy clause of the Fifth Amendment.
{13} We decline to address Defendant's argument because he did not properly preserve it. See State v. Vaughn, 2005-NMCA-076, ¶ 7, 137 N.M. 674, 114 P.3d 354. Under Gomez, our first inquiry must be whether the state constitution has been held to provide greater protection under similar circumstances than the federal constitution does. Lynch, 2003-NMSC-020, ¶ 13, 134 N.M. 139, 74 P.3d 73. No New Mexico case has applied an expansive interpretation to the acquittal aspect of the New Mexico double jeopardy clause. Id. Accordingly, proper preservation requires a defendant to "raise this claim in the trial court and provide a basis to interpret the state constitution differently." Vaughn, 2005-NMCA-076, ¶ 7, 137 N.M. 674, 114 P.3d 354; see also Lynch, 2003-NMSC-020, ¶ 13, 134 N.M. 139, 74 P.3d 73. We agree that Defendant did cite to the state constitution in his pleadings, but he did not articulate why the provisions of the state constitution should be interpreted differently from those of the federal constitution. By failing to present to the trial court any argument or authority in support of a more expansive interpretation of Article II, Section 15, of the New Mexico Constitution as it relates to the acquittal aspect of double jeopardy, Defendant failed to preserve this argument on appeal.
C. Double Jeopardy and Conviction of Second-Degree Murder
{14} In general, the federal double jeopardy clause protects against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments for the same offense. State v. Angel, 2002-NMSC-025, ¶ 7, 132 N.M. 501, 51 P.3d 1155. In Defendant's motion, he concentrates on the first protection, which is aimed to prevent the government from "harassing citizens by subjecting them to multiple suits until a conviction is reached, or from repeatedly subjecting citizens to the expense, embarrassment and ordeal of repeated trials." Id. ¶ 15 (internal quotation marks and citation omitted). The key question is whether the acquittal on one of the second-degree murder theories also acted as an acquittal on the entire second-degree murder charge and thereby prohibited any retrial on the remaining theory under a double jeopardy analysis.
{15} There is no question that jeopardy attached in this case; jeopardy terminates upon an acquittal, upon a conviction, or with certain types of mistrial. County of Los Alamos v. Tapia, 109 N.M. 736, 737 & n. 1, 790 P.2d 1017, 1018 & n. 1 (1990). Under the doctrine of double jeopardy, a verdict of acquittal is given "absolute" protection in order to guarantee the finality of that verdict *71 because the defendant's interest in such finality is "at its zenith." Tapia, 109 N.M. at 742, 790 P.2d at 1023. It is fundamental that a defendant cannot be retried after a verdict of acquittal, even if the verdict is egregiously erroneous, United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), and that acquittals hold "special weight" under double jeopardy analysis. Tibbs v. Florida, 457 U.S. 31, 41, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Our case law also instructs that what constitutes an acquittal
is not to be controlled by the form of the judge's action. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged and the focus is on substance as well as form.
Vaughn, 2005-NMCA-076, ¶ 9, 137 N.M. 674, 114 P.3d 354 (internal quotation marks and citation omitted).
{16} Although there is no New Mexico case law directly on point, we look to recent case law that addresses, in a variety of contexts, what is or is not an acquittal. These cases support our resolution that the fact that the jury signed a not guilty verdict is not controlling when the jury had not finished its deliberations on all of the charges submitted to it in this one proceeding and when none of the important policies protected by the double jeopardy clause was implicated. In State v. Rodriguez, 2006-NMSC-018, ¶ 1, 139 N.M. 450, 134 P.3d 737, our Supreme Court recently held that the trial court was entitled to correct the verdict form to reflect the true verdict of the jury and thus eliminate any double jeopardy violation. The jury foreman in Rodriguez had mistakenly signed the not guilty verdict form when the jury had unanimously found Defendant guilty. Id. In that case, the Court noted that the jury did not leave the presence and control of the trial court after the incorrect verdict was read and the jury was discharged. Id. ¶ 8. Therefore, because the record in the case was adequate, the Court determined that although the trial court stated in open court that Defendant was not guilty of the crime charged, no outside influence tainted the corrected verdict. Id. ¶ 11. The Court could not find that entry of the jury's chosen verdict was barred by double jeopardy. Id.
{17} In another recent case, Vaughn, 2005-NMCA-076, 137 N.M. 674, 114 P.3d 354, this Court rejected the defendant's claim of double jeopardy. Id. ¶ 30. In that case, the defendant appealed his conviction for aggravated driving while under the influence of intoxicating liquor or drugs. Id. ¶ 1. Among other issues, the defendant argued that the trial court acquitted him of aggravated DWI during the proceedings and therefore violated double jeopardy protections when the court found him guilty later on in the same proceedings. Id. The defendant argued that oral remarks and a written interlocutory order made by the trial court constituted an acquittal of the refusal basis for aggravated DWI. Id. ¶ 4. This Court concluded that there was no double jeopardy violation because "neither the trial court's oral comments nor its interlocutory order subjected Defendant to the harassment of a second prosecution after a verdict of acquittal." Id. ¶ 30.
{18} Our task here is to consider whether the substance of the jury verdict acquitting Defendant of second-degree deliberate intent murder represented a resolution, correct or not, of some or all of the factual elements of the second-degree felony murder theory, under which Defendant was convicted. Id. ¶ 9. We agree that the jury verdict finding Defendant not guilty under the deliberate intent theory is a resolution of guilt for that particular theory of the step-down for Count 1, first-degree deliberate intent murder. Those verdicts, however, did not terminate jeopardy for Count 1 because the jury was also instructed on the alternative for felony murder and its lesser offense of second-degree murder during the same proceeding. The jury's acquittal of first-degree felony murder was a final resolution for that degree of the crime, but there remained the question of Defendant's guilt under the alternative theory of second-degree murder.
{19} In this case, the State was entitled to charge Defendant in the alternative, *72 and the jury was entitled to convict Defendant of a lesser offense under either one of the first-degree murder theories. The deliberate intent theory of murder requires that the killing be accomplished "with the deliberate intention to take away the life of" the victim. UJI 14-201 NMRA. The felony murder alternative does not require a deliberate intention, but that alternative does require the element of aggravated burglary as the predicate felony. See State v. Tanton, 88 N.M. 333, 335, 540 P.2d 813, 815 (1975) (holding that the rule that an acquittal or conviction of a lesser included offense bars subsequent prosecution of a greater offense does not apply where the charges are brought in the alternative). Compare UJI 14-201 with UJI 14-202 NMRA. "A person may by one act violate more than one statute or commit more than one offense." State v. Ortiz, 90 N.M. 319, 321, 563 P.2d 113, 115 (Ct.App. 1977). "Also, a statute may be violated in several ways by different acts." Id. at 322, 563 P.2d at 116. The concept of double jeopardy is not involved, since the charges were in the alternative. Id. "When alternative charging is to the effect of a crime being committed in various ways and the various ways are pursuant to a statute the charge is not legally deficient." Id.
{20} We do not disagree with Defendant's statement of the general rule that "when a defendant has been acquitted at trial[,] he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." Sanabria v. United States, 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); see also Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). However, given the fact that the jury convicted Defendant during the same proceedings, we do not think that the policies behind the double jeopardy acquittal rule support a holding in Defendant's favor.
{21} First, finality, or the defendant's legitimate expectation of repose, is one of the most fundamental policies on which the acquittal rule is based. See County of Los Alamos v. Tapia, 109 N.M. 736, 742, 790 P.2d 1017, 1023 (1990) ("Much of the policynot all, to be surebehind the Double Jeopardy Clause is thus simply to protect the defendant's interest in repose."); Peter Westen & Richard Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup.Ct. Rev. 81, 124 (1979) ("Defendants may have come to expect that jury acquittals will be final and, because of that expectation, may breathe the proverbial sigh of relief when acquitted by a jury."). Here, Defendant was convicted by the jury and so cannot have had any legitimate expectation that the jury's not guilty verdict meant that he would go free. In fact, he did not think that the jury's not guilty verdict was meaningful at all until after his appeal of the guilty verdict and judgment. It is also noteworthy that no judgment was entered on the not guilty verdict and that the judgment adjudicated Defendant guilty of second-degree murder under Count 1.
{22} Second, double jeopardy prevents the government from simply trying a case repeatedly until it gets a conviction. Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) ("[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."). In this case, the State has already gotten a conviction, and so allowing the State to retry the case would not mean giving the State an opportunity to correct its past mistakes that led to an acquittal, which is one outcome that double jeopardy is designed to prevent. Moreover, given the guilty verdict, Defendant was not found to be "innocent" of the crime of murder, so his claims regarding the acquittal are not persuasive. See Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) ("If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair.").
{23} Finally, the acquittal prong of double jeopardy jurisprudence protects jury nullification, or the right of the jury to acquit against the weight of the evidence. Westen *73 & Drubel, supra, at 129-32 (arguing that the most persuasive rationale behind the rule that acquittals are unreviewable is that there is no such thing as an "erroneous acquittal" because in any given case, the jury might have been exercising its right to acquit against the evidence); see also United States v. DiFrancesco, 449 U.S. 117, 130 n. 11, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (noting Professor Westen's statement that "[t]he prohibition on retrial following an acquittal is based on a jury's prerogative to acquit against the evidence"). Here, the jury examined all of the evidence and found Defendant guilty. Thus, we are not called upon to safeguard the jury's right to disregard the evidence and acquit Defendant in the interests of leniency.
{24} The jury was presented with two separate theories of murder; the members rejected one theory and convicted Defendant of a lesser offense on the other. This method of having the jury consider the charges resulted in two second-degree murder verdict forms. The jury found Defendant guilty of second-degree murder under the step down to felony murder. Retrial on this conviction does not violate double jeopardy.
D. Failure to Object and Fundamental Error
{25} Because Defendant's double jeopardy claim is without merit, any remaining or related claim that the verdicts were inconsistent or confusing has been waived, and there is no other valid claim on appeal. While Defendant would have preferred another approach to the organization of the instructions, he never objected to the instructions or questioned the verdicts. See Rule 5-611(E), (F) NMRA (stating that any party may request that the jury be polled after a verdict is returned but before it is recorded and that no irregularity in the verdict may be raised, unless it is raised before the jury is discharged).
{26} Although Defendant urges this Court to rely on fundamental error in the event that this Court finds that he did not properly object to the verdicts or instructions, reliance on fundamental error is not appropriate under the circumstances of this case. According to State v. Cunningham, 2000-NMSC-009, 128 N.M. 711, 998 P.2d 176, fundamental error will be found only when there exist "circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." Id. ¶ 21 (internal quotation marks and citation omitted). Fundamental error review describes our affirmative duty to guard against injustice, despite the procedural deficiency of a particular claim. State v. Reyes, 2002-NMSC-024, ¶ 42, 132 N.M. 576, 52 P.3d 948 (holding that fundamental error review is applied "to prevent a miscarriage of justice"); see also State v. Osborne, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (same).
{27} Defendant does not make any claim that his conviction of second-degree murder is dubious or that there was not sufficient evidence for the conviction. Defendant does not provide any support for the idea that the jury was confused by the instructions or verdict forms. While it appears Defendant would have preferred that the jury been instructed on the two theories of first-degree murder and then been given one instruction on second-degree murder, Defendant had no questions about the instructions at the time they were given to the jury, he did not question the verdict forms, and he did not request that the jury be polled. There is no contention that the jury was improperly instructed on the elements of the offenses or that the instructions were contradictory; it appears that juries elsewhere have been instructed in a similar fashion. See State v. Montoya, No. 28,404, slip op. ¶¶ 23-24 (N.M.Sup.Ct. Mar. 8, 2006).
{28} The evidence presented at trial established that Defendant armed himself with a rifle and went to Gonzales's residence. There was evidence that he entered the residence and told his codefendant, "Shoot them. Shoot them. Kill them[.]" The codefendant shot and killed Gonzales, and Defendant left the scene. This provides sufficient evidence to convict Defendant of second-degree murder, a conviction he appealed, and the circumstances of the guilty verdict for second-degree murder do not "shock the conscience." See Cunningham, 2000-NMSC-009, *74 ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). Consequently, fundamental error is not applicable.
III. CONCLUSION
{29} There is no double jeopardy violation. The trial court's order dismissing the charge against Defendant is reversed, and the case is remanded for retrial.
{30} IT IS SO ORDERED.
WE CONCUR: LYNN PICKARD, Judge and MICHAEL E. VIGIL, Judge (dissenting).
VIGIL, Judge (dissenting).
{31} The fundamental flaw in the reasoning of the majority is its premise that two separate theories of second-degree murder were presented to the jury. This is not correct. While the first-degree murder charge was in the alternative, the lesser included offense to each alternative was the same second-degree murder. Because the jury instructions were structurally flawed, it superficially appears the jury was allowed to consider two separate theories of second-degree murder. The jury found Defendant not guilty of second-degree murder. In my view, the constitutional prohibition against double jeopardy precluded the jury from subsequently finding Defendant guilty of the same second-degree murder. Since the majority concludes otherwise, I dissent.
{32} Defendant encountered Lorenzo Martinez and Victor Gonzales, and got into a fist fight with them following an argument. Defendant and codefendant then went to the home of Defendant's uncle and retrieved a rifle. When they could not figure out how to load it, they picked up a third individual, who loaded the rifle. The three then proceeded to the home of Cecilia Gonzales, who was the mother of Lorenzo Martinez and Victor Gonzales. Upon arriving, Defendant went to the house unarmed and knocked on the door while codefendant and the third person remained in the car with the rifle. As Defendant and Mrs. Gonzales were talking on the porch, codefendant went running into the house with the loaded rifle, looking for Lorenzo Martinez and Victor Gonzales. Mrs. Gonzales and her sister, Maria Martinez, who lived with her, got hysterical and started screaming. When Mrs. Gonzales started going towards the kitchen, codefendant shot her, killing her. He also shot and wounded Mrs. Martinez when she started running to the rear of the home. Defendant and codefendant then ran to the car outside and drove away.
{33} The indictment in pertinent part charged Defendant with first-degree murder by a deliberate killing or, in the alternative, first-degree murder in the commission or attempt to commit a felony. The jury was instructed to consider whether Defendant was guilty of first-degree murder by a deliberate killing. The jury was then told it could consider whether Defendant was guilty of second-degree murder "as an included offense of first-degree murder by a deliberate killing." A separate instruction then told the jury it could consider whether Defendant was guilty of felony murder "which is first degree murder, as charged in the alternative" to deliberate first-degree murder. In a fourth separate instruction, the jury was told to consider whether Defendant was guilty of second-degree murder "as an included offense of felony murder." Prior to its deliberations, the trial court orally instructed the jury that it was first to consider first-degree murder by a deliberate killing, then second-degree murder as an included offense of first-degree murder by a deliberate killing. After considering these offenses, the jury was told it could then consider whether Defendant was guilty of felony murder as the alternative to murder by a deliberate killing and then second-degree murder as an included offense of felony murder. These oral instructions on the sequence in which the jury was to consider the offenses mirrored the written instructions.
{34} The jury found Defendant not guilty of first-degree murder by a deliberate killing "as charged in Count 1," not guilty of second-degree murder "as an included offense of first[-]degree murder by a deliberate killing as charged in Count 1," not guilty of felony murder "as charged in the alternative to Count 1," and guilty of second-degree murder *75 "as charged as an included offense of felony murder which is first degree murder as charged in the alternative to Count 1."
{35} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb," and it applies to the states through the Fourteenth Amendment. U.S. Const. amend. V; Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Our own constitution provides, "[N]or shall any person be twice put in jeopardy for the same offense[.]" N.M. Const. art. II, § 15. At its most basic level, the constitutional prohibition against double jeopardy means that once a defendant has received an acquittal for an offense, the defendant is no longer subject to being placed in jeopardy for that same offense. In Vaughn, we recently reiterated:
Under the doctrine of double jeopardy, a verdict of acquittal is given absolute protection to guarantee finality of that verdict because the defendant's interest in such finality is at its zenith. Also, once an accused is actually, and in express terms, acquitted by a court, the finality of that judgment will not yield to any attempts to dilute it.
2005-NMCA-076, ¶ 9, 137 N.M. 674, 114 P.3d 354 (internal quotation marks, citation, and brackets omitted). We also recognized in Vaughn that the United States Supreme Court has said that it is "`the most fundamental rule' that a defendant cannot be retried after a verdict of acquittal, even if that verdict is egregiously erroneous," id. (citing Martin Linen Supply Co., 430 U.S. at 571, 97 S.Ct. 1349), and that "[a]fter an acquittal, any type of fact-finding proceeding going to elements of the charged offense violates the federal double jeopardy clause." Id. (citing Smalis v. Pennsylvania, 476 U.S. 140, 142, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986)); see also Sanabria, 437 U.S. at 75, 98 S.Ct. 2170 (holding that no exceptions permit a retrial once the defendant is acquitted); State v. Cooper, 1997-NMSC-058, ¶ 52, 124 N.M. 277, 949 P.2d 660 (stating that the New Mexico Constitution also protects against a second prosecution for the same offense after an acquittal).
{36} Defendant was found not guilty of second-degree murder. Once that occurred, he was no longer subject to being convicted or punished for that same second-degree murder. Stated another way, once Defendant received an acquittal on second-degree murder, the double jeopardy clause prohibited him from being placed in jeopardy for that "same offense." There is no question that there was only one first-degree murder charge and one second-degree murder charge as a lesser included offense to first-degree murder in this case. Although NMSA 1978, Section 30-2-1(A) (1994), sets forth alternative theories of first-degree murder (willful, deliberate, and premeditated killing; felony murder; and depraved mind murder), our Supreme Court has specifically held that these are not separate offenses, but alternative ways of committing the same offense. State v. Lucero, 1998-NMSC-044, ¶¶ 24-25, 126 N.M. 552, 972 P.2d 1143. Under Section 30-2-1(B), "[m]urder in the second degree is a lesser included offense of the crime of murder in the first degree." Aside from the foregoing, the facts in this case demonstrate that there was only a single second-degree murder and that the elements set forth in each separate second-degree murder instruction are identical. Specifically, the jury was told in both instructions that in order to find second-degree murder it had to find the following elements were proven beyond a reasonable doubt: (1) that Defendant killed Mrs. Gonzales; (2) that Defendant knew that his acts created a strong probability of death or great bodily harm to Mrs. Gonzales; and (3) that it happened on or about October 28, 1998. The State concedes this point when it acknowledges in its brief in chief and reply brief that if the jury had returned two convictions for second-degree murder, the trial court would have been required to vacate one as violative of double jeopardy.
{37} The jury determined that Defendant was not guilty of second-degree murder. The only reason the jury was then allowed to find Defendant guilty of the same degree murder was because of the structural flaw in the jury instructions. Cf. Rule 5-611(D) (setting *76 forth the structure for giving instructions on lesser included offenses and polling of the jury when it cannot agree. "If upon a poll of the jury it is determined that the jury has unanimously voted not guilty as to any degree of an offense, a verdict of not guilty shall be entered for that degree and for each greater degree of the offense."). This does not change the fact that the jury acquitted Defendant of second-degree murder because it had already resolved some or all of the factual elements of second-degree murder in Defendant's favor. See Tapia, 109 N.M. at 740, 790 P.2d at 1021 (stating that a defendant is acquitted when there is a "resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense," (quoting United States v. Scott, 437 U.S. 82, 97, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (alteration in original))). Moreover, the structural flaw may not accrue to Defendant's detriment and the State's benefit. Settled jurisprudence teaches otherwise. In Tapia, our Supreme Court quoted Sanabria, 437 U.S. at 64, 98 S.Ct. 2170: "[W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." Tapia, 109 N.M. at 741, 790 P.2d at 1022 (alteration in original) (internal quotation marks omitted).
{38} In an unpublished opinion, our Supreme Court was presented with similar instructions. For one victim, the jury was presented with two theories of first-degree murder, followed in each instance by the lesser included offenses of second-degree murder and voluntary manslaughter. Montoya, No. 28,404, slip op. ¶ 23. Unlike this case, the defendant was found guilty of both theories of first-degree murder, so the Supreme Court did not have to address his argument that only one "step-down" instruction, rather than two, should have been given. Id. ¶ 24. Nevertheless, the Supreme Court acknowledged there was possible error in the instructions in giving the jury the two "step-down" instructions "because of the theoretical possibility of inconsistent verdicts." Id. In this case, the verdicts are not merely "inconsistent." The jury was allowed to find Defendant guilty of second-degree murder after it found him not guilty of that identical second-degree murder. This violated double jeopardy.
{39} An acquittal is entitled to "`special weight'" under double jeopardy analysis. See Vaughn, 2005-NMCA-076, ¶ 9, 137 N.M. 674, 114 P.3d 354 (quoting Tibbs, 457 U.S. at 41, 102 S.Ct. 2211). Further, our courts have a heightened responsibility to insure that an accused is not placed in jeopardy twice for the same offense. New Mexico's first Bill of Rights was promulgated in 1846 by Brigadier General Kearney, and it expressly prohibited double jeopardy, stating: "That no person after having once been acquitted by a jury can be tried a second time for the same offense." Kearney Bill of Rights, cl. 8 (1846). Proposed constitutions were subsequently drafted in anticipation of statehood in 1850, 1872, 1889, and 1910, and all of them had provisions prohibiting double jeopardy protection. See Lynch, 2003-NMSC-020, ¶¶ 31-33, 134 N.M. 139, 74 P.3d 73 (Maes, J., dissenting) (describing the constitutional history of New Mexico's constitutional prohibition against double jeopardy). The present provision came from the 1910 draft. Id. In addition, our legislature has expressed itself in directing that this constitutional right is so valuable, it cannot be waived, even by a defendant, and the courts must determine whether jeopardy was violated anytime the issue is presented: "No person shall be twice put in jeopardy for the same crime. The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." Section 30-1-10.
{40} For the foregoing reasons, I respectfully dissent.