176 P.3d 317 (2007)
2008-NMCA-006
STATE of New Mexico, Plaintiff-Appellee,
v.
Joseph A. GLASCOCK, Defendant-Appellant.
No. 26,337.
Court of Appeals of New Mexico.
October 25, 2007.
Certiorari Granted January 7, 2008.
*318 Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.
John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 30,755, January 7, 2008.

OPINION
PICKARD, Judge.
{1} Defendant appeals his convictions for four counts of forgery and one count of conspiracy to commit forgery, arising from several checks taken from his employer and signed in the employer's name. All of Defendant's convictions were based on making false signatures. See NMSA 1978, § 30-16-10(A) (1963). On appeal, Defendant argues that his forgery convictions violate double jeopardy. He asserts that, under a multiple punishment unit of prosecution theory, the New Mexico Legislature did not intend a separate conviction for each forged check. He also contends that, under the dual sovereignty doctrine, he should be immune from prosecution in New Mexico because he has previously been convicted of forgery of the same checks in a Texas court. Finally, Defendant argues that the trial court erred by allowing the State to introduce into evidence two additional checks that were not used to obtain money, arguing that the additional checks were impermissibly used as evidence of uncharged, prior bad acts. We reject Defendant's contentions, but nonetheless reverse one of Defendant's forgery convictions for insufficient evidence that the crime occurred in New Mexico.
FACTS
{2} On March 31, 2003, Defendant was a trainee at Henderson Tire Company in Chaparral, New Mexico, when he took six checks from the company checkbook without permission. It is undisputed that Defendant forged the account holder's signature on four of these checks, and gave three of them to his co-conspirator, John Dowd, to cash at a Wal-Mart in El Paso, Texas. Defendant himself cashed the fourth check at a cash checking service also located in El Paso. Defendant was convicted by a New Mexico jury of four counts of forgery for falsely signing the four negotiated checks, as well as one count of conspiracy to commit forgery. Defendant now appeals his convictions.
{3} For purposes of our review, the critical questions of fact posed to the jury in this case were (1) whether Defendant signed each of the four checks at one time or on separate occasions and (2) whether Defendant signed each of the four checks in New Mexico. No direct evidence was introduced at trial on either of these issues. The trial testimony of the State's witnesses is susceptible to conflicting inferences.
{4} A detective who investigated the stolen checks and took the voluntary statement of Defendant testified that Defendant told her *319 that he took a total of six checks and forged four of them while sitting in Dowd's automobile outside Henderson Tire. Also testifying for the State, Dowd testified that Defendant gave him all of the checks in the office of Henderson Tire. Either version of events would tend to support an inference that the four checks were forged by Defendant in New Mexico in a single episode.
{5} However, evidence was offered at trial which would support an inference that each check was signed on a separate day. Each check bears a different date, ranging from March 31, 2003, to April 24, 2003. Dowd testified that he made several trips to Chaparral to socialize with Defendant over the course of a year. During one of these visits, on or about March 31, 2003, Defendant asked him if he had a checking account. When Dowd responded in the affirmative, Defendant gave him one of the forged checks and asked Dowd to cash it for him. This check bears the date March 31, 2003. Dowd testified that he filled in the "Pay to the Order of line in his name, endorsed the check, cashed it in El Paso, and gave Defendant the full proceeds. Dowd did not ask any questions of Defendant about this check, but Defendant told him that his employer was "trying to help him out." He "totally believed" Defendant's story.
{6} Dowd continued to return to Chaparral to visit Defendant after the first check was forged and cashed. During this time, Dowd cashed a second check in the same manner as the first, and Dowd gave Defendant the full proceeds. This check bears the date April 1, 2003. Dowd testified that he still believed Defendant's story when he cashed this second check. He testified that he never saw Defendant forge a check in front of him.
{7} Dowd was asked by Defendant to cash another check, dated April 24, 2003. Dowd testified that, unlike the first two checks, this check was already made out to him when Defendant transferred it, and Defendant gave Dowd a portion of the proceeds of the check. It was at this point that Dowd "figured something out." When later questioned by police, Dowd made a statement to the effect that he "got caught up in something." He told the investigating officer that "when [he] found out," he was "already in too deep." In summary, Dowd described an epiphany that runs contrary to an inference that he was given all four forged checks on March 31, 2003, either in his car outside Henderson Tire, or in the office of the same establishment. Dowd's testimony suggests that the more reasonable inference is that Defendant was forging the stolen checks one at a time in a series of events in which Dowd was progressively more involved.
{8} Defendant himself cashed one of the stolen checks, dated April 4, 2003, at a check cashing service in El Paso. The police detective testified that Defendant, upon taking the checks from the company checkbook on March 31, 2003, had proceeded to write them out both to Dowd and to himself, supporting an inference that this check was written in New Mexico at the same time as the others. However, no additional evidence was introduced that would support this inference. Dowd was apparently not aware of this forgery, and testified that he had never seen Defendant forge a check in his presence.
{9} The remaining two checks were never negotiated. However, the "Pay to the Order of" line was completed in Dowd's handwriting on at least one of these checks, and at least one of these uncharged checks was endorsed by Dowd. The State never charged Defendant with forgery of these two checks, but introduced them at trial over defense counsel's objection as evidence of conspiracy.
DISCUSSION
A. Double JeopardyUnit of Prosecution
{10} Defendant contends that his convictions on four counts of forgery violate double jeopardy because the New Mexico Legislature never intended for Defendant's acts to give rise to multiple convictions. We disagree.
{11} This Court recently had occasion to consider a similar double jeopardy challenge in State v. Turner, 2007-NMCA-105, ¶ 25, 142 N.M. 460, 166 P.3d 1114. We explained that the "constitutional prohibition against double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." Id. ¶ 10 (internal quotation marks and citation omitted). *320 In multiple punishment cases, there are two types of potential issues: "(1) multiple violations of the same statute, referred to as `unit of prosecution' cases; and (2) violations of multiple statutes, referred to as `double-description' cases." Id. ¶ 10 (internal quotation marks and citation omitted). Because Defendant is challenging his four convictions for forgery under the same statute, we are presented with a "unit of prosecution" case. See id. ¶ 25. Double jeopardy challenges raising the issue of the unit of prosecution are reviewed de novo. State v. Boergadine, 2005-NMCA-028, ¶ 12, 137 N.M. 92, 107 P.3d 532.
{12} Unit of prosecution problems are analyzed in two steps. State v. Bernal, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289. "First, we review the statutory language for guidance on the unit of prosecution." Id. If we are unable to ascertain the unit of prosecution from the statutory language, "we move to the second step, in which we determine whether a defendant's acts are separated by sufficient `indicia of distinctness' to justify multiple punishments under the same statute." Id.
{13} This Court recently conducted the first step of this analysis, in Turner, 2007-NMCA-105, 142 N.M. 460, 166 P.3d 1114, concluding that "the language in the forgery statute is sufficiently ambiguous such that we cannot resolve the unit of prosecution simply by examining the language of the statute." Id. ¶ 28. Although we cited the 2006 version of the statute in Turner, id, ¶ 26, the pertinent language was carried forward verbatim from the earlier version of the statute, and no issue was raised in Turner concerning the effect of the 2006 statute. To the extent that Defendant in this case argues the effect of the 2006 statute, we need only say that Defendant's conduct occurred in 2003, Defendant was formally charged in 2003, and article IV, section 34 of the New Mexico Constitution would preclude the 2006 statute from applying in this case. See State v. Lucero, 2007-NMSC-041, ¶¶ 14-15, 142 N.M. 102, 163 P.3d 489. We therefore proceed with the second step of the analysis. See Turner, 2007-NMCA-105, ¶ 29, 142 N.M. 460, 166 P.3d 1114.
{14} Under the second step, "we determine whether a defendant's acts are separated by sufficient `indicia of distinctness' to justify multiple punishments under the same statute." Bernal, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289. "Such indicia include the timing, location, and sequencing of the acts, the existence of an intervening event, the defendant's intent as evidenced by his conduct and utterances, and the number of victims." State v. DeGraff, 2006-NMSC-011, ¶ 35, 139 N.M. 211, 131 P.3d 61 (citing Herron v. State, 111 N.M. 357, 361, 805 P.2d 624, 628 (1991)). These are flexible factors intended to guide appellate courts in unit of prosecution analyses. Boergadine, 2005-NMCA-028, ¶ 21, 137 N.M. 92, 107 P.3d 532. No single factor is controlling. Id.
{15} Our primary concern is to ensure that sufficient evidence exists to establish that each false signing was distinct from the others. State v. McClendon, 2001-NMSC-023, ¶ 5, 130 N.M. 551, 28 P.3d 1092. In reviewing the facts of the case to determine if each signing is distinct from the others, we must indulge "in all presumptions in favor of the verdict." Id. (quoting Herron, 111 N.M. at 362, 805 P.2d at 629). Applying the foregoing factors to the evidence presented in our case, we conclude that the State demonstrated that each of the signings was distinct enough to warrant separate forgery convictions. We reverse the conviction arising from the check Defendant forged and cashed on his own, because there was insufficient evidence without fragmenting the evidence to the point of distortion to support the jury's determination that the forgery of this check took place in New Mexico.
{16} The first factor, timing, is an ambiguous indicator in the case. At trial, the State presented no direct evidence of the dates upon which Defendant signed the various checks. The indirect evidence was capable of supporting conflicting inferences. On the one hand, Defendant took all of the checks on the same date, and he told the detective he signed all of the checks in the same location, in Dowd's automobile outside his employer's place of business. Dowd also testified that Defendant gave him all of the checks in one place, at Henderson Tire. No matter which *321 version the jury believes, such testimony tends to support a reasonable inference that Defendant forged all of the checks in a single episode.
{17} Oh the other hand, the checks all reflected different dates, ranging from March 31 to April 24. Dowd's testimony in particular supports a rational inference that the checks were signed on separate occasions. The facts that .Dowd made multiple visits to Chaparral and cashed two of the three checks before "figuring out" that they were forged further support such an inference. Dowd stated, "[A]fter the first two [checks], I figured something out." The jury could have rejected Defendant's version of events as told to the police detective after hearing Dowd describe his epiphany and his testimony that Defendant gave him "a check" on the first occasion, and after that, he cashed more checks. The jury could have reasonably inferred that the checks were not signed together in Dowd's car on March 31, 2003. In fact, by its verdict, the jury made an implicit finding that each of the forged checks was signed by Defendant on a different date. We are required to indulge all presumptions in favor of this verdict. See McClendon, 2001-NMSC-023, ¶ 5, 130 N.M. 551, 28 P.3d 1092, After reviewing the record before us, we hold that there is sufficient evidence to support the jury's finding that all four checks were forged on separate dates.
{18} However, for the jury to infer that the check that Defendant cashed himself in El Paso, Texas, was forged in New Mexico would require fragmentation of the testimony to such a degree as to distort it. See State v. Manus, 93 N.M. 95, 101, 597 P.2d 280, 286 (1979), overruled on other grounds by Sells v. State, 98 N.M. 786, 653 P.2d 162 (1982); State v. Gaitan, 2002-NMSC-007, ¶ 24, 131 N.M. 758, 42 P.3d 1207. The only way the jury could have found that the check in question was written in New Mexico would have been to believe Defendant's statement to the police detective, which described a single act of forgery in Dowd's car in Chaparral, New Mexico on .March 31, 2003. No other evidence was introduced at trial which would support such an inference. Yet, the jury clearly disbelieved this testimony because it drew an inference that this particular check was one in a series of separate forgeries. Accordingly, we hold that there is insufficient evidence to support a finding that the check Defendant drafted and cashed himself was forged in New Mexico, and we reverse Defendant's conviction for this count of forgery.
{19} Continuing our unit of prosecution analysis, the second and fourth factors, location of the victim and sequencing of the acts, are tailored to address unit of prosecution issues in cases involving sex offenses. Boergadine, 2005-NMCA-028, ¶ 23, 137 N.M. 92, 107 P.3d 532. As such, we regard them as unhelpful in this context. See a
{20} The third factor, concerning the existence of an intervening event, supports multiple convictions as the dates of March 31, April 1, and April 24 are different dates, with the discreet events of check writing and cashing separated by the host of other events of the days. With respect to the fifth factor, we must determine whether Defendant's conduct and utterances suggested a single criminal intent. In this case, the jury found that Defendant forged four separate checks on four separate dates, and as we have indicated above, we hold that there is sufficient evidence to support such an inference. This course of conduct suggests multiple instances of intent to obtain monies from the victim under false pretenses. See, e.g., State v. Baca, 1997-NMSC-018, ¶ 13, 123 N.M. 124, 934 P.2d 1053 (concluding that there was "no evidence of a single intent" where the defendant negotiated five of the victim's checks, each in a different amount, on four separate dates); cf. Boergadine, 2005-NMCA-028, ¶ 25, 137 N.M. 92, 107 P.3d 532 (concluding that the defendant's acts of taking different sums of money on different dates, based on separate assurances, allegedly for distinct purposes, did not suggest a single criminal intent),
{21} Turning to the sixth factor, as previously stated, there was a single victim in this case. While the existence of multiple victims lends powerful support for multiple offenses, Bernal, 2006-NMSC-050, ¶ 18, 140 N.M. 644, 146 P.3d 289, "the reverse is not always true." Boergadine, 2005-NMCA-028, ¶ 27, 137 N.M. 92, 107 P.3d 532. Here, *322 the existence of a single victim weighs slightly in favor of a single conviction, but is by no means a controlling factor. See, e.g., id. (finding sufficient indicia of distinctness between fraudulent acts involving a single victim). We conclude that on balance, the evidence is capable of supporting three of Defendant's four convictions.
B. Double JeopardyDual Sovereignty
{22} Defendant argues that his convictions for forgery should be overturned on grounds that he has already been convicted and sentenced for the same acts in Texas. By this argument, Defendant invites the Court to reconsider the scope and applicability of the dual sovereignty doctrine. For the reasons that follow, we decline the invitation.
{23} The United States Supreme Court has described the nature and foundation of the dual sovereignty doctrine as follows.
The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the peace and dignity of two sovereigns by breaking the laws of each, he has committed two distinct offenses. . . . Consequently, when the same act transgresses the laws of two sovereigns, it cannot be truly averred that the offender has been twice punished for the same offense[.]
Heath v. Alabama, 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (internal quotation marks and citations omitted).
{24} The New Mexico Supreme Court explicitly adopted the dual sovereignty doctrine in the case of State v. Rogers, 90 N.M. 604, 605-07, 566 P.2d 1142, 1143-45 (1977). "Accordingly, where a defendant's conduct amounts to the commission of a criminal offense within the geographical authority of more than one sovereign, each sovereign may prosecute regardless of what the other has done." Id. at 605, 566 P.2d at 1143.
{25} Rogers is largely dispositive of Defendant's objection. To avoid this result, however, Defendant urges us to limit Rogers and the dual sovereignty doctrine to cases in which separate prosecutions are pursued by state and federal authorities with overlapping geographical jurisdictions. However, in the Heath opinion, the United States Supreme Court rejected this narrow approach, concluding that the dual sovereignty doctrine applies to all cases in which multiple sovereigns have a legitimate interest in pursuing prosecutions, including cases in which defendants are prosecuted in more than one state. 474 U.S. at 89-91, 106 S.Ct. 433.
{26} Defendant invites us to diverge from the federal jurisprudence in this particular on the ground that the double jeopardy clause of the New Mexico Constitution should afford greater protection than its federal counterpart. However, in Rogers, the New Mexico Supreme Court ruled that the New Mexico double jeopardy clause "should be construed and interpreted in the same manner" as the federal double jeopardy clause where the dual sovereignty doctrine is concerned. Id. at 606, 566 P.2d at 1144. Accordingly, if any departure from federal precedent is to be made, it must be initiated by the New Mexico Supreme Court or the Legislature. See, e.g., State v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (noting that the Court of Appeals "remains bound by Supreme Court precedent"); Rogers, 90 N.M. at 606, 566 P.2d at 1144 ("[I]f there is to be a change in the dual sovereignty doctrine, public policy would dictate that such a change should be initiated by the Legislature.").
{27} Moreover, we hold that Defendant failed to properly preserve for appeal the issue of dual sovereignty under the New Mexico constitution. Following State v. Gomez, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1, our first inquiry must be "whether the state constitution has been held to provide greater protection under similar circumstances than the federal constitution does." State v. Jimenez, 2007-NMCA-005, ¶ 13, 141 N.M. 106, 151 P.3d 67, cert. granted, 2007-NMCERT-001, 141 N.M. 164, 152 P.3d 151. Rogers held that since the double jeopardy provisions of the New Mexico and federal constitutions are "so similar in nature, we are of the opinion that they should be construed and interpreted in the same manner." 90 *323 N.M. at 606, 566 P.2d at 1144. No New Mexico case since Rogers has applied an expansive interpretation to the dual sovereignty aspect of the New Mexico double jeopardy clause. "Accordingly, proper preservation requires a defendant to raise this claim in the trial court and provide a basis to interpret the state constitution differently." Jimenez, 2007-NMCA-005, ¶ 13, 141 N.M. 106, 151 P.3d 67 (internal quotation marks and citation omitted). Because Defendant did not present to the trial court any argument or authority in support of a more ex, pansive interpretation of article II, section 15 of the New Mexico Constitution as it relates to the dual sovereignty aspect of double jeopardy, Defendant failed to preserve'this argument for appeal. Jimenez, 2007-NMCA-005, ¶ 13, 141 N.M. 106, 151 P.3d 67.
C. Bad Acts Evidence
{28} Finally, Defendant contends that the district court erred in admitting evidence of the two checks that were never negotiated and that did not provide the foundation for any of the charges. Generally speaking, evidence of prior bad acts, including uncharged crimes, is inadmissible to prove the character of a person in order to show action in conformity therewith. See Rule 11-404(B) NMRA. However, such evidence may be admitted for other purposes, such as proving motive, preparation, plan, or intent. Id. Below, the district court concluded that the checks were admissible for these purposes. We agree.
{29} In addition to the various counts of forgery discussed at length above, Defendant was charged with one count of conspiracy. This charge was based upon evidence that Defendant agreed with another, Dowd, to obtain money in exchange for the various forged checks by negotiating the signed instruments. One or both of the additional, un-negotiated checks that are at issue contained Dowd's name, as payee, written in Dowd's handwriting. This writing provided compelling circumstantial evidence that Dowd knowingly participated with Defendant in a common scheme. Because direct evidence of knowledge and intent are rarely available, see State v. Motes, 118 N.M. 727, 729, 885 P.2d 648, 650 (1994) (noting that because intent is subjective, it is rarely proved by direct evidence and is almost always inferred from other facts in the case), the district court acted well within its discretion in concluding that the indirect evidence of knowledge and intent that was supplied by the un-negotiated checks was relatively strong. See generally State v. Romero, 2006-NMCA-045, ¶ 73, 139 N.M. 386, 133 P.3d 842 ("We review a trial court's decision to admit evidence under Rule 11-404(B) for abuse of discretion."), aff'd, 2006-NMCA-045, 139 N.M. 386, 133 P.3d 842. By contrast, the prejudicial effect of the two checks is slight in this case involving another four checks whose admissibility is unquestioned. Consequently, we uphold the district court's implicit determination that the checks' probative value outweighed their prejudicial effect. See generally Rule 11-403 NMRA; State v. Chamberlain, 112 N.M. 723, 726, 819 P2d 673, 676 (1991) (observing that the district court is vested with great discretion in applying Rule 11-403, and it will not be reversed absent an abuse of that discretion).
CONCLUSION
{30} For the foregoing reasons, we reverse one of Defendant's four convictions for forgery, Count Three, involving the check that Defendant himself cashed. Finding no merit in Defendant's remaining contentions, we affirm his remaining convictions, and remand to the district court for entry of a new judgment and resentencing consistent with this opinion.
{31} IT IS SO ORDERED.
WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.