This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                 **NO. 28,770**

**KENNETH OWENS,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Frank K. Wilson, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant appeals his convictions pursuant to a conditional plea for distribution of marijuana, conspiracy to distribute marijuana, contributing to the delinquency of a minor, and use or possession of drug paraphernalia. At issue in this appeal is whether an undercover agent's use of an unwitting minor to facilitate drug transactions with Defendant constituted outrageous governmental conduct such that the charges against Defendant should have been dismissed under the objective entrapment doctrine. We agree with the district court that the conduct was not so outrageous as to require dismissal. We therefore affirm.

**BACKGROUND**

The undisputed facts are set forth in Defendant's motion to dismiss and were further verified and supplemented by the testimony of Officer Holguin and his supervisor, Captain Mirabal, at the suppression hearing.

In July 2006, Officer Arturo Holguin was working as an undercover agent at a Burger King where he met Georgia Thompson. When they talked, Thompson asked Officer Holguin if he smoked cigarettes. He told her he did not. Officer Holguin asked Thompson if she smoked "weed," and she said she did. Thompson told Officer Holguin that she bought marijuana from someone named "K.J." (Defendant). She agreed to take Officer Holguin to meet Defendant but said that she needed to call him first. Thompson used Officer Holguin's cell phone to call Defendant, and they

planned to meet after she got off work. Officer Holguin arranged for surveillance, picked up Thompson after she got off work, and Thompson again called Defendant from Officer Holguin's cell phone to finalize the meeting plan.

On their way to the meeting place, Thompson asked Officer Holguin to stop at a convenience store to buy her some cigarettes. Officer Holguin declined, saying that he did not have his identification. Thompson tried to purchase cigarettes herself, but the clerk refused to sell them to her. At that point, Officer Holguin realized that Thompson was a minor. While they were waiting for Defendant to arrive, Thompson disclosed to Officer Holguin that her father had kicked her out of her house, that she lived in the car parked in front of her house, that she was allowed into the house only to shower and do laundry, and that there had been physical violence between her and her father.

A black SUV arrived at the meeting place and Officer Holguin gave Thompson twenty dollars to purchase marijuana. Officer Holguin watched Thompson walk over to Defendant and then watched Defendant go into the convenience store. Defendant returned a few minutes later with two packs of cigarettes that he gave to Thompson. Thompson returned to Officer Holguin's vehicle and removed a rolled-up baggie that appeared to contain marijuana from one of the cigarette packs. As they drove back

into town, Thompson described how she had used drugs and alcohol in her mother's presence from the time she was twelve years old.

During a conversation five days later at the Burger King, Thompson asked Officer Holguin if he wanted more "stuff from the other day." Officer Holguin understood that Thompson was referring to more marijuana and said that he did want more. He picked Thompson up from her work and took her first to the bank to cash her paycheck. As she waited for her transaction to be completed, Thompson used Officer Holguin's cell phone and asked the person on the other end for "two twenty bags." Because the source was going to take some time to deliver the drugs, Thompson took Officer Holguin to various other places looking for marijuana, which they did not find. Thompson then telephoned her source again and was told it would be another thirty minutes. While they waited for the delivery, Thomson asked for some cigarettes and this time Officer Holguin bought some for her. Also during this time, another undercover officer posing as a friend called Officer Holguin. The officer asked if Thompson could get him cocaine. Thompson said that she could, but because of issues she had with her mother in the past, she did not like to deal in cocaine.

At some point, a red Mercury with tinted windows pulled up along side Officer Holguin's vehicle. Officer Holguin did not know the identity of the person driving

4

the Mercury, but the person sitting in the front passenger seat was Defendant. Officer Holguin gave Thompson twenty dollars. She left Officer Holguin's car and got into the back seat of the Mercury. A few minutes later, Thompson returned to Officer Holguin's vehicle with a bag of marijuana that she said the two of them would have to split. She divided up the marijuana, kept her portion, and gave Officer Holguin the balance of approximately six grams.

In addition to the above-described sequence of events, Officer Holguin testified that he was hired by the Alamogordo Police Department for the specific purpose of targeting drug dealers in undercover operations. He further testified that he was in constant contact with his supervisor, Captain Mirabal, during the operation involving Thompson. Captain Mirabal testified that the department had a general policy not to use juveniles as informants because of safety concerns. However, both Officer Holguin and Captain Mirabal testified that in this case, Thompson was not an informant but instead a suspect herself.

**DISCUSSION**

At the outset, we note that it is unclear whether Defendant's entrapment defense is based on state or federal constitutional grounds. In his motion to dismiss before the district court, Defendant asserted this entrapment defense pursuant to *State v. Vallejos*, 1997-NMSC-040, 123 N.M. 739, 945 P.2d 957, a case which is based entirely on state

5

constitutional grounds. We therefore presume that Defendant is relying on state constitutional grounds with the apparent concession that he would not be granted greater relief under federal law. *See generally State v. Garcia*, 2009-NMSC-046, ¶¶ 50-63, 147 N.M. 134, 217 P.3d 1032 (Bosson, J., specially concurring) (addressing preservation requirements for state constitutional arguments); *State v. Gomez*, 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1 (holding that under the interstitial approach, the state constitution is examined only when the right being asserted is not protected under the federal constitution).

We also note that Defendant modifies his argument on appeal and contends now that this case "is factually one of 'vicarious entrapment' rather than objective entrapment." However, as we discuss below, Defendant's entrapment defense in the district court was based on a theory of normative objective entrapment —a type of entrapment that is not dependent upon any type of inducement, but instead is premised on outrageous governmental conduct such that "due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *See Vallejos*, 1997-NMSC-040, ¶ 16 (internal quotation marks and citation omitted). Because the vicarious entrapment argument was not raised below, it is not preserved for purposes of appeal. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on

6

appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). We nevertheless address Defendant's objective entrapment defense because the alleged outrageousness of the government's conduct is raised—albeit briefly—in the brief in chief.

New Mexico recognizes both the subjective and objective forms of entrapment. *Vallejos*, 1997-NMSC-040, ¶¶ 5-6. As we have noted above, Defendant raises a defense of objective entrapment. There are two branches of objective entrapment: factual and normative. *Id.* ¶¶ 10-11. Factual entrapment occurs when police conduct creates a substantial risk that an ordinary person who is not so predisposed would be caused to commit the crime; normative entrapment occurs when police conduct exceeds the standards of proper investigation and violates substantive due process, irrespective of whether such conduct might ensnare the ordinary person. *Id.* ¶¶ 14-16. Defendant's argument is focused on normative entrapment.

When a defendant raises a normative entrapment defense, the district court "carefully scrutinizes both the methods and purposes of police conduct to determine whether police tactics offend our notions of fundamental fairness, or are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* ¶ 16 (internal quotation marks and citations omitted). In this context, *Vallejos* identifies "two broad categories of

impropriety: unconscionable methods and illegitimate purposes." *Id.* ¶ 17. In the present case, Defendant argues that the police engaged in unconscionable methods and exceeded the scope of a proper police investigation.

Whether the police conduct at issue constituted normative objective entrapment is a matter of law that we review de novo. *Id.* ¶ 39; *see also* UJI 14-5161 NMRA committee commentary ("Ordinarily, the judge decides the issue of whether the alleged conduct, if it occurred, was acceptable as a matter of law, leaving for the jury the issue of whether this misconduct did occur."). In doing so, we keep in mind that an objective entrapment normative inquiry for due process violations "should be used sparingly and reserved for only the most egregious circumstances." *Vallejos*, 1997-NMSC-040, ¶ 22 (internal quotation marks and citation omitted).

In support of his entrapment defense, Defendant argues that the police conduct was unconscionable and outrageous because the police used Thompson, a minor and an unwitting participant, in an undercover drug transaction to facilitate drug buys between Officer Holguin and Defendant. To this end, Defendant argues that the officers took no special care or precaution to ensure Thompson's safety, particularly with regard to the second drug transaction, in which Officer Holguin allowed Thompson to get into the Mercury to purchase marijuana even though the identities of some of the persons in the vehicle were unknown. Defendant also argues that the

8

police conduct was unconscionable because Officer Holguin knew that Thompson was emotionally vulnerable based on what she told him about her family and home life and because Officer Holguin contributed to her delinquency by buying cigarettes for Thompson and allowing her to keep part of the purchased marijuana. Conversely, the State argues that Thompson's status as a minor does not translate into outrageous governmental conduct and that the facts of this case do not support dismissal based on unconscionable conduct. We agree with the State.

Our Supreme Court has long held that police are generally not prohibited from infiltrating criminal rings by using deception, such as playing the role of a criminal in order to apprehend criminals, to gain the confidence of the participants, and to ferret out illegal activities. *Id.* ¶ 22. In this case, Officer Holguin did just that. Acting in his undercover capacity to locate drug dealers, he played the role of an interested buyer and asked Thompson, a suspect herself, where he could buy some marijuana.

Although Thompson was a minor, New Mexico case law also rejects the broad proposition that it is unacceptable to involve a minor in a drug transaction. *See State v. Bonilla*, 1999-NMCA-096, ¶¶ 3, 13, 127 N.M. 566, 985 P.2d 168 (holding that an undercover officer's use of the defendant's minor son as an interpreter with a Spanish-speaking woman that led to a subsequent cocaine purchase from the defendant did not constitute outrageous conduct to merit dismissal under objective entrapment), *rev'd*

*on other grounds*, 2000-NMSC-037, 130 N.M. 1, 15 P.3d 491; *In re Alberto L.*, 2002-NMCA-107, 133 N.M. 1, ¶ 1, 57 P.3d 555 (rejecting the child's argument that school officials engaged in unconscionable investigative methods when they oversaw a drug transaction wherein one high school student purchased cocaine from another student). Rather than adopting a blanket rule prohibiting the use of minors in police investigations, we instead engage in a careful review of the underlying circumstances to determine if the police conduct was outrageous or violated our sense of fundamental fairness for purposes of objective entrapment. *See Bonilla*, 1999-NMCA-096, ¶ 13 (noting that each case is unique, and considering the specific conduct at issue to determine whether the use of a minor in a drug investigation was outrageous or violated due process).

In the present case, while certainly troubling, several factors lead us to conclude that the police conduct was not outrageous. First, Thompson was not placed in a situation in which she was unfamiliar. Rather, Thompson was already part of the drug culture. Thompson indicated that she was a marijuana user, told Officer Holguin about her drug and alcohol use from the age of twelve, demonstrated no difficulty in locating a marijuana source for Officer Holguin, and was able to arrange a drug transaction as soon as Officer Holguin asked her to do so. Second, Thompson did not express any unwillingness or discomfort in participating in the undercover drug

transactions. To the contrary, five days after the first drug transaction, it was Thompson who initiated the second transaction when she asked Officer Holguin if he wanted more "stuff from the other day." And third, Thompson herself was a suspect and thereby was not an innocent party who had otherwise been targeted by the police as a conduit to Defendant.

Defendant contends that the police conduct was outrageous because officers placed Thompson in a dangerous situation by allowing her to enter a vehicle to obtain marijuana from Defendant. While we disagree that Officer Holguin's conduct rose to a level of unconscionable, outrageous behavior, we nevertheless express our concern about placing minors in a situation that is potentially dangerous and could lead to possible retaliation by a defendant and his drug associates. In this case, however, Officer Holguin was close by and monitoring the situation. Moreover, Thompson's own conduct revealed that she already knew and had previously dealt with Defendant. This was not a situation where the police were asking a minor to approach an unknown drug dealer. Furthermore, by ultimately apprehending Defendant, Thompson was no longer exposed to the risk of continued interaction with him. In short, there is no indication that the police recklessly endangered her safety. We also do not agree with Defendant's argument that the police conduct was outrageous because Officer Holguin contributed to Thompson's delinquency. While

we do not minimize the fact that Officer Holguin's interactions with Thompson permitted her access to cigarettes and marijuana, those ill-advised actions are not dispositive. *See Bonilla*, 1999-NMCA-096, ¶ 12 (stating that "the fact that [the officer] may have contributed to the delinquency of a minor or exposed the minor to a delinquency charge is not dispositive with respect to the due process inquiry"). With regard to the cigarettes, Thompson was already a smoker, and Officer Holguin initially declined Thompson's request to purchase cigarettes for her. But when Thompson subsequently made another request, Officer Holguin—after checking with his supervisor, Captain Mirabal—purchased cigarettes for her because he was concerned that Thompson would become suspicious and compromise the integrity of the undercover operation.

With regard to the marijuana, Officer Holguin did not give Thompson half of the marijuana purchased during the second transaction. Rather, the facts establish that when Thompson made the second phone call to purchase marijuana, she asked the person on the other end for "two twenty bags." Officer Holguin, however, provided Thompson with only twenty dollars—enough for one bag. Presumably, Thompson asked for "two twenty bags" because she intended to buy some marijuana for herself. Consistent with this presumption, when she emerged from the red Mercury vehicle with one bag, she divided up the bag and kept her portion. Thus, rather than a

12

situation whereby Officer Holguin gave Thompson money to buy marijuana, some of which he allowed her to keep, Thompson independently purchased marijuana for herself at the same time. Considering the circumstances, we cannot conclude that Officer Holguin acted outrageously by allowing Thompson to purchase additional marijuana beyond the twenty dollars purchased for him.

**CONCLUSION**

Based on the foregoing circumstances, we conclude that the police conduct in the undercover drug operation was neither outrageous nor offensive to the concept of fundamental fairness. For this reason, we affirm the district court's denial of Defendant's motion to dismiss and the subsequent judgment and sentence following Defendant's conditional plea.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**ROBERT E. ROBLES, Judge**

_____

**TIMOTHY L. GARCIA, Judge**